Gary HENDERSON, Plaintiff,

v.

ZURN INDUSTRIES, INC., Defendant.

No. TH89–217–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 14, 1990.

Dennis R. Majewski, Terre Haute, Ind., for plaintiff.

Robert F. Wagner, Susan E. Mehringer, Lewis Bowman St. Clair & Wagner, Indianapolis, Ind., for defendant.

ORDER ON PLAINTIFF'S MOTION TO COMPEL AND ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER

McKINNEY, District Judge.

This personal injury action comes before the Court on a discovery dispute concern-

ing a request for production. The issues raised have been briefed and are ready for resolution. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART both the Motion to Compel and the Motion for Protective Order.

## DISCUSSION:

### I. *Background:*

Plaintiff Gary Henderson filed this action in 1989 alleging that he was seriously injured on October 9, 1987, as a result of the defendant's negligence. Henderson specifically alleges that he was injured when an employee of Zurn Industries caused a ladder to fall and strike him. He seeks compensatory damages for his pain and suffering, lost income, and medical expenses. At the time of the incident, Zurn Industries was insured by Aetna Insurance, a non-party to this action.

Henderson subsequently served seven requests for production upon the defendant. Among other things, these requests sought all information in Aetna's files, a copy of the insurance policy issued to the defendant, any statements taken on the defendant's behalf, and copies of the defendant's tax returns.

In response to the production requests, defendant objected on the grounds that many of these items were prepared in anticipation of litigation. Henderson thereafter filed the present motion to compel. Defendant opposes the motion, and has also filed a motion for a protective order as to these discovery items. In essence, this discovery dispute involves five different issues, namely, whether Henderson can discover: (1) the defendant's tax returns; (2) the indemnity policy; (3) statements made by plaintiff to the defendant; (4) the contents of Aetna's files; and (5) the contents of the defendant's files. These issues will be discussed separately below. Because several of the issues arise frequently and have not been fully addressed by any courts in recent years, the ensuing discussion is somewhat lengthier than is necessary in most discovery disputes.

### II. *Analysis:*

#### A. *Tax Returns*

This first issue is easily disposed of, for the plaintiff has no need for the defendant's tax returns in this case. There is no claim for punitive damages here, and the defendant has admitted that it has $2 million in insurance coverage for each occurrence, which is almost three times the plaintiff's demand. Facts concerning a defendant's financial status are ordinarily not discoverable. 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2010 at 93 (1984). Thus, because the defendant's financial condition is not an issue at this juncture of the case, the tax returns are not discoverable. *Accord, Payne v. Howard,* 75 F.R.D. 465, 469–70 (D.D.C.1977).

#### B. *Insurance Policy*

In response to Henderson's request for a copy of the insurance policy issued to Zurn Industries by Aetna Insurance Company, Zurn stated that there is coverage for $2 million per occurrence, but otherwise objected to producing the policy on the grounds that "said policy contains information that is privileged and not relevant to the litigation at hand." It is clear, however, that the policy must be disclosed.

Prior to 1970, there was great debate in the federal courts over whether insurance policies were discoverable. *See* 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2010 (1984). However, in 1970, Rule 26(b)(2) was adopted to provide that insurance is subject to discovery. This Rule provides as follows:

A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial. For purposes of this paragraph, an application

for insurance shall not be treated as part of an insurance agreement.

*Fed.R.Civ.P.* 26(b)(2).

This Rule was adopted in order to "enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." *Advisory Committee Note to Fed.R.Civ.P. 26(b)(2).* The Rule is conducive to settlement and will ordinarily help avoid protracted litigation. *Id.*

Under the plain language of the Rule, the plaintiff is entitled to discover the "existence and contents" of the insurance policy. As Professors Wright and Miller explain, "The rule allows discovery of the ... contents of an insurance agreement and *is not confined to the policy limits.*" 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2010 at 94 (1984). Thus, defendant's attempt to limit discovery to the policy limits is contrary to the express mandate of the Rule.

The caselaw supports this conclusion. For instance, in *Ballard v. Allegheny Airlines, Inc.,* 54 F.R.D. 67, 69 (E.D.Pa.1972), the plaintiff in a slander, false imprisonment, and assault action sought specific information about the defendant's insurance coverage. The defendant responded that it had insurance to cover the damages alleged, but otherwise refused to answer in more detail. *Id.* at 69.

In granting the plaintiff's motion to compel, the *Ballard* court noted the express "contents" language of Rule 26(b)(2), and wrote that the "language of the rule does not justify limiting discovery to the brief conclusory statement given by the defendant." *Ballard,* 54 F.R.D. at 69. The court required the defendant to either answer the interrogatories fully or produce a copy of all relevant insurance policies. *Id. Accord, Hall v. Aetna Casualty and Surety Co.,* 617 F.2d 1108, 1110 n. 2 (5th Cir. 1980) (duty under Rule 26(b)(2) is to produce entire contract).

Thus, in this case the defendant must comply with Rule 26(b)(2) and produce a copy of the insurance policy in question. Defendant has not supported its conclusory argument that some portions of the policy are privileged and irrelevant, and these are certainly "contents" of the policy under the Rule; as such they are discoverable. Accordingly, Defendant shall produce the entire policy within ten (10) days.

### C. *Statements Made by the Plaintiff to the Defendant*

In Request for Production Number 6, Henderson seeks copies of "any documents, statements, reports or memoranda of oral discussions made to the Defendant, ... [its] agents or employees ... regarding the incident which is the subject of this Complaint." The Defendant objects to this request on the grounds that such information was prepared in anticipation of litigation and falls within the limited "work product" immunity. This raises several related issues.

The first question is whether Henderson may discover any statements that he might have made to the Defendant or its agents or employees. Clearly he can obtain any statements he made to the defendant, for Rule 26(b)(3) specifically provides that a party "may obtain without the required showing a statement concerning the action or its subject matter previously made by that party." *Fed.R.Civ.P.* 26(b)(3). The request above can be read to apply to such statements. Accordingly, the defendant shall produce any such statements made by the plaintiff to the defendant or its agents or employees within ten (10) days.

The second question is whether plaintiff can obtain statements he made to Aetna Insurance. This issue is discussed in the next section of this opinion.

### D. *Insurance Files*

In Requests for Production One and Two, Henderson seeks to obtain any "reports, documents, tape recordings ..., or other information ... [including] memoranda, notes, reports or other records" in the Aetna files. Request for Production Six similarly seeks any statements made to Aetna. Defendant objects to these requests on the grounds of the work product doctrine embodied in Rule 26(b)(3). The

question is thus whether Henderson is entitled to discover any information contained within Aetna's insurance files.

Resolution of this issue involves three separate inquiries. First, whether the files of Aetna Insurance Company, which is a non-party to this action, are even reachable under the discovery provisions. Second, assuming that this non-party's files can be reached by a request for production, are the items requested within the permissible scope of discovery, that is, are they reasonably calculated to lead to the discovery of admissible evidence? Third and finally, even if the items requested are within the scope of discovery, are they excluded under the work product doctrine? Each of these sub-issues will be addressed separately below.

### 1. *Discovering materials from a non-party:*

In some of the reported decisions in which non-party insurance files have been sought under Rule 34, the courts have jumped straight to the work product analysis without reaching the initial questions of whether the insurer can be reached via Rule 34, and whether the materials sought are even discoverable under Rule 26(b)(1). For instance, in *Mazan v. Schmelzer*, 111 F.R.D. 470 (N.D.Ind.1986), the plaintiff brought a personal injury lawsuit against a motorist and later sought production from the motorist of portions of the motorist's insurance carrier's file. In holding that the materials sought were discoverable, the *Mazan* court discussed only the work product exception to discovery that had been raised by the motorist-defendant.

■ Implicit in such a ruling are the initial assumptions that the non-party insurance carrier is subject to requests for production, or that the insurance file is in the possession, custody, or control of the party-defendant, and that the items sought are reasonably calculated to lead to the discovery of admissible evidence. While some of these assumptions might be correct, particularly where, as here and in *Mazan*, the party-defendant raises only a work product objection, it is still necessary to ensure that the requested discovery is allowable under the Federal Rules; this Court cannot enter an order that is contrary to law by virtue of a party's purported waiver. *Cf., Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D.Mass.1988) (district court has discretion to decline to compel production of requested documents even if timely objection has not been made if request exceeds bounds of fair discovery).

In essence, addressing only the work product doctrine in such a case places the proverbial cart before the horse, for the work product rule limits discovery that would otherwise be available. Thus, just as courts deal with subject matter jurisdiction before the merits and defenses of a claim, it is also preferable to first determine who is subject to discovery and what is discoverable before applying a limiting exception.

In cases such as this, then, when an insurance file is sought in a third-party claim in which the insurer is not a party to the action, the first inquiry is whether the insurer is subject to a request for production. Under the federal version of Rule 34, only parties may be served with requests for production. The text of the Rule makes this clear, for subdivision (a) states that "Any party may serve on any other *party* a request [for production]...." *Fed.R.Civ.P.* 34(a) (emphasis added). Subdivision (c), which is entitled "Persons Not Parties," adds that the Rule "does not preclude an independent action against a person not a party for production...."

Thus, as the Advisory Committee Notes confirm, *see Advisory Committee Note to Rule 34* (noting that "Rule 34 as revised continues to apply only to parties), and as scores of cases make clear,[1] a request for

---

**1.** *See, e.g., Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir.1985) ("Rule 34 may not be used to discover matters from a non-party"); *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir.1975) (Rule 34 applies only to parties); *Wimes v. Eaton Corp.*, 573 F.Supp. 331, 333 (E.D.Wis.1983) (noting that the drafters of Rule 34 "deliberate[ly] ... limited the applicability of the rule to parties only").

production simply cannot be made and enforced against a non-party.

The Indiana version of Rule 34 is, of course, different than its federal predecessor, for in Indiana a request for production can be served on non-parties. *See Ind.R. Tr.P.* 34(C).[2] Indiana adopted its version of Rule 34 in order to expedite and simplify the discovery process as it relates to non-parties. *See* 3 W. Harvey, *Indiana Practice* 4, 9 (1988). Thus, in an Indiana state court action, documents can be obtained directly through non-parties by a request for production. In federal court, however, the same documents and other materials can be acquired from non-parties only through the use of a deposition and a subpoena under Rules 30 and 45. *See* 8 C. Wright and A. Miller, *Federal Practice and Procedure,* § 2209 at 618 (1984).

In today's case, it is clear that Aetna is not a "party" to the action as the term is used in the Rule 34. Every "party" must be named in the caption of the complaint, *see Fed.R.Civ.P.* 10(a), and every "party" must be listed on and served with a copy of the summons and complaint. *Fed.R.Civ.P.* 4. *Accord,* Welling, *Discovery of Nonparties' Tangible Things,* 59 Notre Dame.L. Rev. 110, 112 n. 8 (1983) ("[i]t is usually easily discernable who the parties are because their names must be listed on the summons and complaint"). The term "party" used in Rules 4 and 10 is presumed to have the same meaning as it does in Rule 34. *See, Hotel Equities Copr. v. Commissioner,* 546 F.2d 725, 728 (7th Cir.1976) (presumption of same meaning when same term is used); *Barnson v. United States,* 816 F.2d 549, 554 (10th Cir.1987) (same). Thus, Aetna Insurance is not listed as a party, so at this juncture it seems clear that its files cannot be obtained.

■ Nonetheless, a number of district courts have ruled that a non-party insurer is subject to Rule 34's provisions under the theory that the insurer is virtually a party to the action. For instance, in *Simper v. Trimble,* 9 F.R.D. 598 (W.D.Mo.1949), the district court ruled that photographs made at the non-party insurer's direction were subject to Rule 34. Without specifically stating that the carrier was a "party" under the Rules, the court wrote:

> It would be idle to say that an insurer thus obligated and in·complete control and direction of the defense might be able to claim immunity from the usual obligations resting upon a litigant. For all practical purposes it is performing the exact functions and playing the precise role of an actual party to the litigation. That being true it should be subject to the usual and reasonable rules of procedure, and especially with respect to discovery.

*Simper,* 9 F.R.D. at 600. *Accord, Bingle v. Liggett Drug Co.,* 11 F.R.D. 593 (D.Mass.1951) ("as a practical matter the insurer is the real litigant here"); *Wilson v. David,* 21 F.R.D. 217 (W.D.Mich.1957) (following *Simper*); *State Farm Ins. Co. v. Roberts,* 97 Ariz. 169, 398 P.2d 671 (1965) ("As a practical matter State Farm is the real litigant here").

Although these decisions have the virtue of facilitating discovery, this Court declines to follow their implicit holding that a non-party that is closely aligned with a named litigant can be treated as a party. Although the Federal Rules of Civil Procedure are to be construed to secure the "just, speedy, and inexpensive determination of every action," *Fed.R.Civ.P.* 1, their text cannot be rewritten to avoid inefficiencies that they might produce.[3]

---

2. This might explain why the Indiana courts have not yet made a distinction between first-party direct action suits against an insurer and third-party claims where the insurer is not a named defendant. *See Cigna–INA/Aetna v. Hagerman–Shambaugh,* 473 N.E.2d 1033 (Ind. App.1985) (first-party claim); *DeMoss Rexall Drugs v. Dobson,* 540 N.E.2d 655 (Ind.App.1989) (third party claim).

3. Indeed, in interpreting the somewhat related Federal Rules of Appellate Procedure, the Supreme Court has declined the opportunity to liberally construe the term "party." In *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Court held that Appellate Rule 3(c)'s requirement that the notice of appeal specify the party or parties taking the appeal is not satisfied by the use of the term "et. al." on the notice. Although the

The drafters of Rule 34 have had many occasions to change Rule 34 as Indiana has done since the above-referenced district court decisions, but they have declined to do so. As the Advisory Committee Notes explain:

> Rule 34 as revised continues to apply only to parties. Comments from the bar make clear that in the preparation of cases for trial it is occasionally necessary to enter land or inspect large tangible things in the possession of a person not a party, and that some courts have dismissed independent actions in the nature of bills in equity for such discovery on the ground that Rule 34 is preemptive. *While an ideal solution to this problem is to provide for discovery against persons not parties in Rule 34, both the jurisdictional and procedural problems are very complex.* For the present, this subdivision makes clear that Rule 34 does not preclude independent actions for discovery against persons not parties.

*Advisory Committee Notes to Rule 34* (emphasis added). Thus, the drafters are well aware of the difficulties that the Rule creates, but have thus far opted not to change its provisions.

Indeed, while the Rule could probably be changed to reach parties and "real parties in interest," it retains the narrow term "party." As a district court from the Seventh Circuit has noted, the drafters of Rule 34 deliberately limited its application to parties. *Wimes v. Eaton Corp.*, 573 F.Supp. 331, 333 (E.D.Wis.1983). Thus, the "real party in interest" jargon that emanated from some of the district courts more than 25 years ago is of little value today.

The best argument in favor of treating a non-party insurer as a "party" under Rule 34 lies in the text of the work product exclusion of Rule 26(b)(3). This subdivision states that a party may discover documents and tangible things "otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party *or by or*

*for that other party's representative (including the other party's* attorney, consultant, surety, indemnitor, *insurer*, or agent) only upon a [special] showing...." *Fed.R. Civ.P.* 26(b)(3) (emphasis added). Relying on this "representative" language, one could make the argument that an insurer, an attorney, or an agent is deemed to be the same entity as the party for purposes of the discovery rules.

On closer examination, however, this argument fails for several reasons. Here it must first be remembered that, other than the provisions speaking to depositions, all of the discovery rules apply only to parties. In construing these various provisions in harmony as this Court must do, *NuPulse, Inc. v. Schlueter Co.*, 853 F.2d 545, 549 (7th Cir.1988); *American Min. Congress v. U.S. E.P.A.*, 824 F.2d 1177, 1185 (D.C.Cir. 1987), it would be unusual to enlarge the scope of each of the specific discovery rules by way of the narrow provision of Rule 26(b)(3).

This is particularly true when it is remembered that Rule 26(b)(3) is a *limiting* provision of the discovery rules that embraces the work product doctrine. Without Rule 26(b)(3), items prepared in anticipation of litigation are freely discoverable; with the Rule, the movant must meet a special burden such that discovery is more restrictive. With this background, it becomes clear that when the drafters of Rule 26(b)(3) added the language that materials prepared in anticipation for litigation are given qualified protection even if prepared by or for the party's *representative*, the drafters were narrowing rather than expanding the scope of discovery. The "representative" language merely makes the work product doctrine applicable to a claims adjuster, private investigator, or secretary, just as it applies to an attorney.

Absent a clear indication to the contrary, it would be illogical to take a limiting provision and use it in support of an expansion of discovery. Rule 26(b)(3) simply cannot be used to rewrite the express "party"

---

*Torres* decision turned on the Supreme Court's holding that Rule 3(c) is mandatory and jurisdictional, the case shows that the various federal rules are no longer given unduly expansive readings.

limitation of Rule 34. Accordingly, Aetna Insurance is not subject to a Rule 34 request for production, and this Court cannot enter an order that would have that effect even if Aetna's insured purported to waive this argument.[4]

This does not end the analysis, however, for Rule 34 does have an agency aspect to it. Specifically, Rule 34(a) allows discovery of documents and tangible things that "are in the possession, custody or control of the party upon whom the request is served...." Thus, besides having an obligation to produce items that the party physically possesses, it must also produce those over which it has "control."

In applying the control test, courts look to whether the party has "the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir.1984). *Accord, Bowman v. Consolidated Rail Corp.*, 110 F.R.D. 525, 526 (N.D.Ind.1986); *In Re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 423 (N.D.Ill.1977). "Thus, a party can be required to produce a document that he has turned over to his attorney." 8 C. Wright and A. Miller, *Federal Practice and Procedure*, § 2210 at 621 (1984). A party may also be found to have control of

documents turned over to his insurer, while a corporation may be required to produce documents held by its subsidiary. *Id.*

Such holdings make sense, for as with any rule or statute, in applying this aspect of Rule 34, this Court must give terms their ordinary meaning absent a showing that the term has a special connotation. *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 803 (7th Cir.1988); *International Administrators, Inc. v. Life Ins. Co. of North America*, 753 F.2d 1373, 1379 (7th Cir.1985). The term "control" is commonly defined as "restraining power or influence; check; restraint; power [or] authority." *Webster's Encyclopedic Dictionary*, 186 (1978). Thus, the "legal right to control" standard advanced by the courts appears to be a proper formulation of Rule 34.[5]

The control issue will thus ordinarily turn on what the party's legal rights are as against the non-party. In an insurance setting like today's case, the focus should be on the contract between the insured and the insurer, and the relevant state law on the issue of whether the insured has the legal right to obtain various materials held in the insurer's files. This would seem to be a fact sensitive analysis to be decided on a case-by-case basis.[6]

---

**4.** Further problems might exist if a non-party were treated as a "party" for purposes of discovery. As one court has noted, the enforcement provisions for discovery that are contained within Rule 37 also apply only to parties. *See Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir.1975). Because Rule 37 is "of limited application when applied to non-parties," *Id.*, a non-party would have no real reason to comply with a request for production, unless of course the "party" language of Rule 37 were also to be judicially rewritten.

Jurisdictional problems could also loom. If a non-party insurer were treated as a "party" for discovery purposes, one could make a good argument that the insurer should then be treated as a party for jurisdictional purposes as well. Under 28 U.S.C. § 1332(c), the argument would go, the insurer would be deemed a citizen of its state of incorporation and its state of principal business, which in some cases could destroy diversity. It is likely that other problems could arise from such an expansive interpretation of the discovery rules, and as each new problem arose, the inherent flaws of the unfounded construction would resurface.

**5.** Two district courts have recently stated that the term "control" is to be broadly construed in this context. *See Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D.Conn.1989); *Biben v. Card*, 119 F.R.D. 421, 425 (W.D.Mo.1987). It is true that the Federal Rules have generally been given a "liberal" construction. *Staren v. American National Bank & Trust*, 529 F.2d 1257, 1263 (7th Cir. 1976). However, the Supreme Court has more recently stated that the Federal Rules shall be given their plain meaning, and when their terms are unambiguous, the judicial inquiry is generally complete. *Pavelic & LeFlore v. Marvel Entertainment Group*, —— U.S. ——, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

**6.** The Court notes that a unique three-part test for determining control has been advanced by one district court. In *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D.Del.1986), the court wrote that the "nature of the relationship" between the party and non-party was determinative, and that in analyzing the nature of the relationship, the court should look to the corporate structure encompassing the different parties, the non-party's connection to the transaction at issue, and the degree to which the

■ In today's case, then, plaintiff can compel production of discoverable documents from Aetna's files only if defendant Zurn Industries physically possesses such materials or has the right to obtain such documents. Here, the defendant's only objection to the requests for production was on work product basis, and it has not contended that it does not either possess or control the requested items. A discovery objection not raised is ordinarily deemed waived. *In Re United States*, 864 F.2d 1153, 1156 (5th Cir.1989).

Thus, the defendant has implicitly conceded such control or possession, and the contract and state law need not be analyzed to determine whether control exists. Although this Court could not require discovery from a non-party, it can enter an order that in essence allows discovery from a non-party where the party has implicitly admitted control or possession over the non-party documents. Accordingly, by virtue of the defendant's waiver of the objection, the Court holds that the control or possession requirements of Rule 34 have been met.[7]

### 2. *The scope of discovery:*

Having concluded in this particular setting that discovery of Aetna's files can be considered, it is next necessary to address the scope of permissible discovery under Rule 26(b)(1), which requires that items be reasonably calculated to lead to the discovery of admissible evidence. With this initial guideline, it is seen, for instance, that an adjuster's note that "Witness A should be contacted" would likely lead to admissible evidence and would be discoverable, while an adjuster's note that "We should offer "X" amount of dollars to settle" would ordinarily *not* be discoverable because evidence of conduct or statements made in compromise is inadmissible under

Rule 408 of the Federal Rules of Evidence. Moreover, under Rule 411, evidence of liability insurance is also not admissible.

■ Thus, it is seen that while evidence of how the insurer viewed the case would surely be enlightening to the plaintiff, it usually could not be used at trial, could not lead to other admissible evidence, and is thus outside the scope of discovery. *Accord, Smedley v. Travelers Ins. Co.*, 53 F.R.D. 591, 592 (D.N.H.1971) ("expressions of opinion ... as to liability and settlement value ... would under no circumstances be admissible at the trial, and it does not appear that such memoranda are reasonably calculated to lead to the discovery of admissible evidence").

Beyond this, however, it is impossible to address discoverability further, for the Court has not been provided with the contents of the insurance file. As is set forth below in further detail, the parties are to discuss this among their counsel in an attempt to resolve the matter without further Court intervention. Should any issues remain, the Court will conduct an *in camera* review of the insurance files to expedite this matter.

### 3. *Exclusion from discovery under the work product doctrine:*

The next step in determining whether the contents of the insurance files are discoverable is to consider the work product exclusion. As will be seen, this is not a simple issue. Certainly any statements from witnesses and tangible evidence from the accident site are reasonably calculated to lead to the discovery of admissible evidence.

The problem, however, lies in whether such statements are excluded under the "work product" doctrine that was established in the landmark decision of *Hick-*

---

non-party will receive a benefit from any award in the case. Such a standard has obvious merit in the parent-subsidiary corporate setting, but is of little use in today's context. The fact that the insurer is connected to the case and will benefit from a defense judgment simply does not answer the question of whether the insured has the legal right to obtain documents in the insurer's files.

**7.** It should be noted here that if the defendant does not actually have control or possession, the purported waiver would likely be ineffective, for a non-party's rights cannot ordinarily be waived by a party (absent an agency relationship, which might well be present in this instance anyway).

*man v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and later embraced in the 1970 amendments to Rule 26(b)(3). Under this provision, if otherwise discoverable documents or tangible things are prepared "in anticipation of litigation" by or for a party or "by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," then such documents or tangible things are only discoverable upon a special showing by the party seeking discovery. *Fed.R.Civ.P.* 26(b)(3).[8]

The key question in this case, then, is whether any statements from third parties or any other discoverable documents or tangible things were prepared "in anticipation of litigation" such that the limited immunity of the work product doctrine applies.[9] This is one of the most frequently litigated issues in federal practice, and although some have criticized the work product doctrine and have called for its abolition, *see* Waits, *Work Product Protection for Witness Statements: Time for Abolition,* 1985 Wis.L.Rev. 305, the doctrine remains well entrenched today.

In addressing this issue, the Court is bound by federal cases interpreting Rule 26(b)(3), for as the Third Circuit recently noted, "Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in *Fed.R.Civ.P.* 26(b)(3)." *United Coal Companies v. Powell Construction Co.,* 839 F.2d 958, 966 (3d Cir.1988). Thus, although the Indiana decisions cited by the parties are of some assistance in this matter, they are not dispositive. Rather, where, as here, there is no definitive Supreme Court case addressing

the issue of when something is prepared in "anticipation of litigation," this District Court must first look to the Seventh Circuit for guidance.

The leading and one of the few Seventh Circuit opinions on this issue, *Binks Manufacturing Co. v. National Presto Industries, Inc.,* 709 F.2d 1109 (7th Cir.1983), involved memoranda prepared by in house counsel of a corporation. In *Binks,* the litigation involved the sale of various machines that National Presto had purchased from Binks. The seller sought to recover for monies owing under the sales contract, while the buyer claimed that the cookers were defective. The seller prevailed at trial, and the buyer appealed.

One of the buyer's arguments on appeal was that the trial court erred in allowing the seller to discover letters written by the buyer's in-house counsel. The first letter, entitled "Evaluation of Binks Situation," was addressed to the buyer's chief in-house counsel, while the second, which dealt with the associate in-house counsel's opinion as to who was responsible for the machines' breakdowns, was sent to the buyer's Production Manager. The buyer asserted that the two documents were protected by Rule 26(b)(3)'s work product immunity. *Id.* at 1118.

The Seventh Circuit, however, affirmed the trial court's decision to allow the discovery of these documents. In so doing, the *Binks* court discussed the general standards to be applied in these settings. The court noted that the mere fact that litigation ensues does not, by itself, cloak materials with the work product immunity. *Id.* The court then seemed to establish a standard for addressing these issues, writing:

---

**8.** Thus, by the express language of the Rule, the work product privilege is not dependent upon an attorney's involvement, but instead only requires that the materials be prepared by a "representative" in anticipation of litigation. The Rule specifically makes an insurer such a "representative" for purposes of the work product doctrine. Thus, statements such as those made in *Hamed v. General Accident Ins. Co.,* 112 F.R.D. 213, 215 (N.D.Ind.1986) (per Magistrate Rodovich), that "the work product privilege does not apply to an investigation conducted by an insurance company unless the investigation has been conducted under the direction of an

attorney" are not supported by the text of the Rule.

**9.** Here it is important to note that in light of the concession that the defendant is in possession or control of Aetna's files, any statements made by the *plaintiff* to the insurer are discoverable even if they were taken in anticipation of litigation. As discussed previously in this opinion, Rule 26(b)(3) provides a special mechanism for a party to obtain his own prior statements without any special showing of need.

'Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation.'

*Binks*, 709 F.2d at 1118–19 (*quoting* 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2024) (emphasis added by Seventh Circuit).

The court added to this standard, writing, " 'While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation.' " *Binks*, 709 F.2d at 1119 (*quoting Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C.1982)). " 'At the very least,' " then, the party seeking the protection of the work product doctrine has the burden of proving that " 'some articulable claim, likely to lead to litigation, has arisen.' " *Binks*, 709 F.2d at 1119 (*quoting Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 865 (D.C.Cir.1980)). *See also, Toledo Edison v. G.A. Technologies, Inc.*, 847 F.2d 335, 338 (6th Cir.1988) (burden is on party resisting discovery to show that material was prepared in anticipation of litigation); *Western National Bank v. Employers Ins. of Wausau*, 109 F.R.D. 55, 57 (D.Colo.1985) (same).

■ Thus, the Seventh Circuit requires that the document sought to be protected can be said to have been prepared or obtained *because of the prospect of litigation* when the *primary motivation was to aid in possible future litigation. See also In Re Special September 1978 Grand Jury*, 640 F.2d 49, 65 (7th Cir.1980) (Seventh Circuit states that it does "not read the 'in anticipation of litigation' requirement broadly"); *Southwire Co. v. Essex*

*Group, Inc.*, 570 F.Supp. 643, 650 n. 11 (N.D.Ill.1983) (following the "because of the prospect of litigation" standard set forth in *Binks* ); *DeMoss Rexall Drugs v. Dobson*, 540 N.E.2d 655, 658 (Ind.App.1989) (Indiana Court of Appeals adopts similar "because of the prospect of litigation" standard). Such a construction of the term "in anticipation of litigation" makes sense, for the key word "anticipate" means to "prevent or preclude by prior action; to forestall; to realize beforehand; to look forward to; [or] to expect." *Webster's Encyclopedic Dictionary*, 37 (1978).

In *Binks*, the Seventh Circuit applied this standard and determined that the letters in question were not protected by the work product doctrine because the buyer had failed to meet its burden of proof. The court wrote that "while there may have been 'the remote prospect of litigation' when [the letters were written,] the [buyer] failed to meet is burden of proving that the memoranda were 'prepared ... *because* of the prospect of litigation,' or, that 'some articulable claim *likely* to lead to litigation' had arisen." *Binks*, 709 F.2d at 1120.

■ Applying this standard to today's facts, it is seen that some items will be covered by the work product doctrine while others might not. Here, Henderson was injured on the job on October 9, 1987. The defendant was insured by Aetna at the time of the accident. On or about October 26, 1987, Aetna received its first notice that plaintiff had retained an attorney when it received a medical report via attorney Dennis Majewski; however, there is nothing in the record to indicate that Aetna was at this juncture acting because of the prospect of litigation.

■ To the contrary, it is undisputed that Aetna continued to communicate directly with the plaintiff and made payments directly to him.[10] Although there

---

10. Unfortunately, other than three letters submitted by the defendant, the parties have not proferred any evidence on this issue. Unsworn representations of lawyers are not evidence and do not become a part of the record. *Morrison v. Duckworth*, 898 F.2d 1298, 1299 (7th Cir.1990).

Instead, the showing required by the party resisting discovery can be made "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories." *Toledo Edison v. G.A. Technol-*

was at least a remote prospect of future litigation, it has not been shown that the defendant's insurer was doing anything other than investigating and processing an insurance claim, which is the nature of an insurer's business.[11]

■ That Aetna learned of attorney Majewski's involvement as early as October 26, 1987, is not dispositive, for the defendant has failed to prove that it switched to a litigation posture because of such knowledge. The mere awareness by an insurer that an injured person was seeking legal advice would not ordinarily cause one to anticipate litigation. Thus, any statements made by witnesses to the defendant, its agents, or its insurer (per the express language of Rule 26(b)(3)) soon after the incident are not protected by the work product doctrine. *Accord, Schmidt v. California State Auto. Ass'n.*, 127 F.R.D. 182, 184 (D.Nev.1989) (holding that not all of claims file was prepared in anticipation of litigation, and noting that the "majority of cases that have dealt with the issue of whether investigative materials prepared by insurance claims adjusters is work-product prepared in anticipation of litigation have held that since insurance

companies have a routine duty to investigate accidents, such materials are not prepared in anticipation of litigation....")

Some eight months later on June 8, 1988, Aetna received a letter from attorney Majewski in which he simply stated that he had "been asked by Gary Henderson to represent him in a claim for personal injury," and requested that the adjuster contact him at her earliest convenience. Although this formal notice from the attorney of his involvement in the "claim" can be viewed as a step towards litigation, the defendant has again failed to prove that this notice put the claim into a "likely" litigation posture. *See Binks*, 709 F.2d at 1120. Indeed, nowhere in the letter did the attorney even threaten or imply that litigation would ensue. *Cf., Binks*, 709 F.2d 1119 (noting significance of the lack of any threat of litigation in an attorney's letter). Thus, even through June 8, 1988, any documents or materials prepared by the defendant or its insurer in relation to statements of witnesses have not been shown to be made in anticipation of litigation. *Accord, Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C.1987) (from information sup-

---

ogies, Inc., 847 F.2d 335, 339 (6th Cir.1988). However, many of the representations in this case have not been contested by the parties, and in order to expedite this matter, the Court will assume that such evidence could be produced to support such representations.

11. The Court recognizes that there are decisions which stand for the proposition that "statements taken by a claims agent immediately after an accident in anticipation of litigation are protected by Rule 26(b)(3)." *See, e.g., Eoppolo v. National R.R. Passenger Corp.*, 108 F.R.D. 292, 294 (E.D.Pa.1985). However, this does *not* mean that statements taken by claims agents *are automatically deemed to be in anticipation of litigation.* Rather, the factual inquiry is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2024, at 198 (1984). As in most factual settings, there should not be any *per se* rules that would dictate a finding that the work product doctrine should apply. Instead, a case-by-case approach is preferable. *Accord, Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D.Pa.1985); Note, *Work Product Dis-*

covery in Insurance Litigation, 18 Ind.L.Rev. 547 (1985) (advocating case-by-case analysis).

The Court further notes that while this is a third-party claim as opposed to a direct first-party claim on an insurance contract, the work product doctrine embodied in Rule 26(b)(3) does not specifically distinguish between the two. Nor, for that matter, have many of the cases made such a distinction. *See, e.g., Cigna–INA/Aetna v. Hagerman–Shambaugh*, 473 N.E.2d 1033 (Ind.App.1985) (first-party claim); *DeMoss Rexall Drugs v. Dobson*, 540 N.E.2d 655 (Ind.App.1989) (third party claim). Nonetheless, in this factual analysis, it seems that this could be a factor taken into consideration. Indeed, one would expect there to be more litigation on third-party claims than on direct first-party contract actions, with a resultant increased anticipation of such litigation in the third-party context. On the other hand, the presence of an attorney in a third-party claim would not necessarily lead one to anticipate litigation, while an attorney's presence in a first-party claim might have such an effect. In any event, this is mere speculation, for this Court has not been provided evidence (such as company or industry statistics) on this matter, and as a result is not in a position to make such a distinction in this particular factual situation.

plied by defendant, district court found that the insurer's investigation, even after claimant had retained counsel, was not shown to have been done in anticipation of litigation); *Mazan v. Schmelzer*, 111 F.R.D. 470, 472 (N.D.Ind.1986) ("Insurance companies customarily deal with plaintiff's attorneys directly both before and after a lawsuit is filed. An insurance company does not automatically anticipate that a lawsuit will be filed merely because the plaintiff has obtained an attorney.").[12]

Some five months later on October 20, 1988, Henderson's attorney again wrote Aetna, but this time in much more detail. His attorney stated that Henderson was not interested in a structured settlement, but would instead like to "settle this in a manner sufficient to compensate Mr. Henderson for his injuries...." His attorney noted that he and the adjuster "ha[d] not communicated greatly in this manner," but added that "now is the time ... to see if we can come [to] an amicable settlement." He closed his letter, writing, "It is Mr. Henderson's desire, I certainly agree with him, to either settle shortly or to initiate a law suit within the next two weeks."

From this juncture, it becomes evident that any materials prepared were done so because litigation was likely. The letter noted that the claimant and the insurer had "not communicated greatly," and went on to threaten the imminent filing of a lawsuit. Given that the injuries had been sustained a year earlier and that no final adjustment of the claim had been reached, it is reasonable to conclude that the insurer changed its posture from routine claims investigation and adjustment to contemplation of litigation. Thus, the Court finds that the defendant has met its burden of proof to show that from the receipt of this letter on October 21, 1988, any statements

taken were done so in anticipation of litigation.[13]

■ Even though materials are covered by the work product doctrine, they are still discoverable under Rule 26(b)(3) if the movant can make the special showing that he has a "substantial need" for the materials and that he is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Fed.R. Civ.P. 26(b)(3).* However, Henderson has not come forth with any evidence to show that he meets this burden. *See Suson v. Zenith Radio Corp.*, 763 F.2d 304, 308 (7th Cir.1985) (where plaintiff made no showing of substantial need, work product doctrine applied).

Thus, Henderson is not entitled to any documents or materials in the insurer's files that were prepared after October 21, 1988, other than any statements that Henderson himself gave to Aetna Insurance.

It is still possible, however, that some items prepared prior to October 21, 1988, are also protected by the work product doctrine. For instance, the Eighth Circuit has held in an analogous setting that case reserve figures calculated by an attorney are by "their very nature ... prepared in anticipation of litigation and, consequently, they are protected from discovery as opinion work product." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir.1987).

As noted above, however, the Court does not have the insurance files to finally resolve this issue. Accordingly, in line with Local Rule 13's mandate and as is discussed further at the end of this opinion, the parties are to first discuss this matter in an effort to resolve this without further Court intervention. If any issues remain, the Court will conduct an *in camera* review, as is often done in this setting, *see,*

---

**12.** It is, of course, possible that Aetna actually changed its posture at this date, as the defendant argues in its brief. However, as a factual matter of proof, this single letter is not enough in this particular case to sustain defendant's burden.

**13.** Again, it is certainly possible that Aetna began anticipating litigation earlier than this be-

cause of the apparent difficulties in communication with the plaintiff's attorney. However, the defendant simply has not come forth with evidence to prove that this is the case. The Court's inquiry at this juncture is "clearly a factual determination," *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir.1987), and the defendant has not provided facts to support its arguments.

*e.g., Utica Mutual Ins. Co. v. Croft,* 432 So.2d 196 (Fla.App.1983).

### E. *Defendant's Files*

In Requests Five and Six, Henderson also seeks production of statements or documents taken or made by the defendant at the scene of the accident or any time after the accident. Defendant has objected on the grounds of the work product doctrine and the attorney client privilege. As was discussed above in the context of the insurance files, any of the requested information that was recorded or prepared after October 21, 1988, is protected by the work product doctrine.

As to the remainder of the defendant's files, the Court does not have the files for review and the parties have not discussed this matter in any detail. Again, the parties are to confer in an effort to resolve this matter, and the Court will conduct an *in camera* review if any disputes remain.

### III. *Conclusion:*

In summary, the plaintiff is not entitled to the defendant's tax returns, but shall be provided a copy of the defendant's insurance policy with Aetna Insurance. Plaintiff is entitled to copies of any statements he made to the defendant or its insurer, regardless of when they were made. Plaintiff is not entitled to any documents or tangible things prepared after October 21, 1988, by the defendant or its insurer, as such items are protected by the work product doctrine.

As to the remaining discovery disputes concerning items pre-dating October 21, 1988, in the defendant's or insurer's files, the parties are ordered to confer in person or by telephone in a good-faith effort to resolve these final matters without additional court intervention. This conference shall occur within fifteen (15) days of this Order. If, after conferring, the parties are unable to resolve all the discovery disputes, they shall file a joint status report within ten (10) days of their conference. This status report shall briefly summarize the areas of dispute. Along with the joint status report, the defendant shall also contemporaneously file sealed copies of the non-privileged portions of the defendant's and the insurer's files for *in camera* review should further Court intervention prove necessary.

Any costs incurred by the parties in bringing or defending these motions shall be born the party that incurred them.

IT IS SO ORDERED.