Leo LOGAN, Plaintiff–Appellant,

v.

COMMERCIAL UNION INSURANCE COMPANY, Defendant–Appellee.

No. 95–3231.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1996.

Decided Sept. 20, 1996.

R. Douglas Hailey (argued), Ramey & Hailey, Indianapolis, IN, Bryan Leo Bradley, Gold & Polansky, Chicago, IL, for Plaintiff-Appellant.

Susan L. Williams, Charles S. Cassis (argued), Brown, Todd & Heyburn, New Albany, IN, for Defendant-Appellee.

Before POSNER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

After Leo Logan suffered a work-related injury, he filed a claim with Commercial Union Insurance Co., his workers' compensation insurance carrier. Commercial Union, however, disputed the claim, and thus Logan did not receive salary continuance or payments for his medical bills until the dispute was settled eleven months after Logan's injury. Logan filed a diversity action claiming that Commercial Union had wrongfully delayed paying his claim and that the delay had damaged Logan physically, psychologically, and financially, but the district court granted summary judgment in favor of Commercial Union on all counts. Logan appeals the entry of summary judgment, as well as the district court's determination during discovery that certain Commercial Union documents, of which Logan had sought production, were protected as privileged work product. Finding that the relevant documents are in fact subject to a qualified privilege, that Logan has not demonstrated compelling need in order to overcome the privilege, and that Logan has failed to put forth sufficient evidence to support essential elements of his claims, we affirm.

## I. HISTORY

Logan first began driving a truck in 1965, in Milwaukee, Wisconsin, and he has driven trucks for various moving companies during most of the years since then. He started working for American Red Ball Transit Company, Inc., in their Indianapolis warehouse in late 1988. Five months later, in April of 1989, he became a truck driver for Red Ball. As part of this change in his occupational duties, Logan and Red Ball entered into a series of contractual agreements describing the contours of their relationship, which ostensibly characterized Logan not as a Red Ball employee but as an independent contractor exclusively devoted to transporting household goods for Red Ball.

One of these agreements was an Equipment Purchase Contract, under which Logan agreed to buy a 1984 tractor from Red Ball for a total cost of $25,402.66, to be paid in installments over a period of three years. Logan's payment of the purchase price was secured by a security interest in the tractor, which could be recovered by Red Ball upon Logan's default. According to the contract, the possible instances of default included if Logan ceased driving exclusively for Red Ball.

The central contract entered into by Logan and Red Ball was a Contract Truckman's Agreement, which provided that for the duration of the agreement Logan would operate his truck exclusively for Red Ball (the agreement was renewed on May 18, 1990, to extend the term of coverage). Under this

agreement, Logan agreed to comply with all Red Ball rules relating to truck operation, to contact Red Ball's dispatcher on a daily basis to obtain driving orders, and to make pickups and deliveries at times specified by Red Ball. Logan was not required to accept all Red Ball transport assignments, but once accepted he was to perform the assignment as instructed by Red Ball. Red Ball had the right to control Logan's payment and to direct Logan's work in packing, crating, loading, and unloading household goods that Red Ball's customers contracted with Red Ball to have shipped. In addition, Logan was required to "perform such other transportation or incidental or supplemental accessorial services as may be necessary and consistent with the shipping contracts between Red Ball and its customers." Although Logan was responsible for paying all his own transportation expenses and obtaining a vehicle license, Red Ball obtained state and federal motor carrier permits for his transportation and had Logan's power of attorney to sign licenses and make reports necessary to obtain state credits for fuel that Logan purchased.

Red Ball possessed workers' compensation insurance for its employees through Hartford Accident & Indemnity Co. However, Red Ball arranged for Logan to obtain his own workers' compensation and employer liability insurance directly from Commercial Union. Red Ball selected Commercial Union and then contacted the company on Logan's behalf. In fact, Logan had no idea which insurance carrier he had until after he was later injured.

Concurrent with his application for insurance with Commercial Union, Logan elected under IND. CODE § 22–3–6–1(b)(4) for workers' compensation coverage as a sole proprietor who is "actually engaged in the proprietorship business." Notice of this election was served upon both Commercial Union and the Indiana Workers' Compensation Board. At Red Ball's request, Logan also executed an affidavit acknowledging that he was self-employed and that his own workers' compensation insurance, rather than Red Ball's, would cover workers' compensation liability for any work-related injury suffered by him or any of his employees. Logan's insurance

premium, together with his truck payment under the Equipment Purchase Contract and his withholding for income taxes and social security contributions, was deducted from his Red Ball paycheck.

On July 25, 1990, Logan was dispatched by Red Ball to Colorado Springs, Colorado, to pick up a load of furniture and haul it to Macon, Georgia. On July 30, while helping to unload the furniture in Macon, Logan fell off a ladder and injured his back, rendering him unconscious. As a result of his injuries, Logan spent three days in intensive care and then remained hospitalized in Macon until September 26, 1990.

Within days after Logan's fall, an accident report was submitted notifying Commercial Union of Logan's injuries, and Commercial Union began its investigation of the claim. On August 13, 1990, Logan filed an action for workers' compensation benefits with the Kansas Workers' Compensation Board (Logan was a resident of Kansas at the time of the injury). The next day, Logan gave a statement to a Commercial Union claims representative, in which he claimed that he was an employee of Red Ball. On the basis of its investigation and Logan's statement, Commercial Union formally denied Logan's claim on August 17, 1990. Logan's attorney immediately sent a letter to Commercial Union demanding that it pay the medical bills and compensation benefits stemming from Logan's July 30 injury. The letter reviewed the applicable laws of Kansas, Indiana, and Georgia, and it reaffirmed Logan's previous statement by concluding that "under the facts presented here and the well-settled law in all jurisdictions, Mr. Logan is clearly not an independent contractor but is an employee of American Red Ball." This conclusion, however, was Commercial Union's exact reason for denying Logan's claim.

Before the Kansas Workers' Compensation Board, Commercial Union argued that Logan had been injured in the capacity of an employee of Red Ball and therefore that Red Ball's insurance carrier, rather than Commercial Union, should pay for Logan's injuries. Commercial Union maintained that jurisdiction was properly in Indiana, not Kansas, because the locus of Logan's and

Red Ball's alleged employment was in Indiana. The Kansas board agreed that it did not have jurisdiction and dismissed Logan's action.

On September 17, 1990, Logan filed an action with the Indiana Workers' Compensation Board, naming Red Ball, Hartford, and Commercial Union as defendants. Before an Indiana board hearing officer, Commercial Union again argued that at the time he was injured Logan was acting as an employee of Red Ball, rather than as an independent contractor, and moved to have itself dismissed as a defendant in the workers' compensation action. In the alternative, Commercial Union argued that if the hearing officer were to find that Logan had been injured while acting as an independent contractor, jurisdiction would then properly lie in Kansas, which being Logan's state of residence is the location of Logan's self-employment.

On December 20, 1990, the hearing officer determined that Logan had been injured while acting as an independent contractor and, thus, that Commercial Union was the proper defendant in the workers' compensation action. The hearing officer also seems to have determined that jurisdiction was proper in Indiana, presumably because the workers' compensation insurance contract between Logan and Commercial Union had been entered into in Indiana. Accordingly, on January 18, 1991, the hearing officer issued an order dismissing Red Ball and Hartford as defendants in the action and ordering Commercial Union to resolve Logan's claim. On February 7, 1991, Commercial Union filed an application requesting that the hearing officer's order be reviewed by the full board.

Red Ball responded with a motion on February 28, 1991, arguing that the order had not been a final award and, thus, was not immediately appealable. Before this matter could be resolved, however, Commercial Union settled its claim with Logan in June 1991 by paying a lump sum of $13,500 for Logan's medical bills and agreeing to pay benefits of $294 per week until Logan returned to work in late 1992.

Two years later, on July 9, 1993, Logan filed a complaint in the Southern District of Indiana, alleging that Commercial Union's nine-month delay in paying his claim had exacerbated his injuries and resulted in his financial ruin. The complaint charged that Commercial Union's conduct in handling Logan's claim constituted: (1) breach of contract, (2) gross negligence,[1] (3) breach of Commercial Union's fiduciary duty of good faith, and (4) intentional infliction of severe emotional distress.[2]

During discovery, Logan requested production of Commercial Union documents pertaining to the processing and disposition of his workers' compensation claim. Commercial Union turned over most of the relevant claim file, but it objected to Logan's request to produce those documents that were created after Logan's claim had been denied and his suit for benefits had been filed in Kansas. It claimed that such documents were protected, some by virtue of the attorney-client privilege and some as privileged work product under FED. R. CIV. P. 26(b)(3). Pursuant to *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), Commercial Union filed a privileged document index sum-

---

1. Logan's complaint actually charges simple negligence and does not explicitly refer to *gross* negligence. However, IND. CODE § 22-3-2-6 provides that "[t]he rights and remedies granted to an employee subject to [the Indiana Workers' Compensation Act] on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, ... at common law or otherwise, on account of such injury or death...." Although this exclusive remedies provision prevents an employee from bringing an ordinary negligence action against his workers' compensation insurer arising out of a work-related injury, the Indiana Supreme Court has recognized an exception where the insurer's conduct

rises to the level of "gross negligence," defined as "the 'intentional failure' to perform a duty 'in reckless disregard of the consequences as affecting the life or property of another.'" *Stump v. Commercial Union,* 601 N.E.2d 327, 332 n. 5 (Ind.1992) (quoting BLACK'S LAW DICTIONARY 931 (5th ed. 1979)). As such, we will, as the district court did, consider Logan's negligence claim as an allegation of *gross* negligence.

2. Logan's initial complaint also alleged constructive fraud, but that count was dismissed on the pleadings early in the litigation, and Logan does not appeal the dismissal.

marizing the nature, author, date, purpose, and reason for nondisclosure of each document for which it claimed privilege. The actual documents in question were submitted to the district court under seal.

The district court designated a magistrate judge under 28 U.S.C. § 636(b)(1)(A) to hear the issue and decide the discoverability of the disputed documents. After a hearing, the magistrate judge issued an order dated January 30, 1995, ordering Commercial Union to produce all of the requested documents. Commercial Union objected to the magistrate judge's determination, and the district court held a hearing on March 7, 1995, to review the order. After hearing argument from the parties, reading Commercial Union's *Vaughn* index, and conducting an *in camera* review of the actual documents, the district court determined that the magistrate judge had clearly erred and reversed her decision, upholding Commercial Union's allegations of both the attorney-client and work product privileges. The district court remarked at the hearing: "I suppose the long and short of it too is, even if totally disclosed, not a single one of these documents would support an argument of bad faith . . . ."

On August 21, 1995, upon Commercial Union's motion, the district court entered an order granting summary judgment in favor of Commercial Union on all counts. Logan appeals both the district court's finding that the Commercial Union documents were protected as privileged work product[3] and its entry of summary judgment.

## II. ANALYSIS

### A. Work Product Privilege

 FED. R. CIV. P. 26(b)(3) provides in relevant part:

[A] party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for another party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Thus, under the Rule, if a party demonstrates that materials in its possession that would otherwise be discoverable were prepared in anticipation of litigation, the materials are considered work product and become subject to a qualified privilege from discovery.[4] This qualified privilege may only be overcome if the party seeking production demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the requested information some other way.

 Logan argues initially that the claim documents he requested during discovery are not privileged work product because Commercial Union has failed to show that the documents were prepared in anticipation of litigation. We have held that "[t]he mere fact that litigation does eventually ensue does not, by itself, cloak materials . . . with the work product privilege; the privilege is not that broad." *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983). Rather, we look to whether in light of the factual context "the document can fairly be said to have been prepared or ob-

---

**3.** Logan does not appeal the district court's determination that some of the requested Commercial Union documents were protected by the attorney-client privilege. Logan contests only the district court's decision concerning those documents over which Commercial Union claimed work product privilege.

**4.** FED. R. CIV. P. 26(b)(3) expressly admonishes courts to give even greater protection against disclosure of *opinion* work product, meaning "the mental impressions, conclusions, opinions, or legal theories of an attorney or other represen-

tative of a party concerning the litigation." *See Upjohn Co. v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 688–89, 66 L.Ed.2d 584 (1981). Commercial Union claimed that certain documents Logan sought to discover were opinion—as well as fact—work product. However, we need not address this issue because, as discussed below, Logan has failed to demonstrate cause to overcome even the qualified nonopinion work product privilege, much less the heightened protection afforded an attorney's mental impressions and opinions.

tained *because* of the prospect of litigation." *Id.* at 1119 (quoting *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977)) (emphasis in *Binks* ). While much of the paperwork generated by insurance companies is prepared with an eye toward a possible legal dispute over a claim, it is important to distinguish between "an investigative report developed in the ordinary course of business" as a precaution for the "remote prospect of litigation" and materials prepared because "some articulable claim, *likely* to lead to litigation ... ha[s] arisen." *Binks,* 709 F.2d at 1120 (citations omitted).

Here, Commercial Union has shown that all the documents for which it claimed privilege were written after Logan's claim had been processed, investigated, and denied, and after Logan had already filed suit for benefits with the Kansas Workers' Compensation Board. Commercial Union's *Vaughn* index indicates that the subject matter of these documents generally concerns how Commercial Union intended to defend against Logan's Kansas and Indiana actions. Clearly, Commercial Union has demonstrated that the documents were created in anticipation of litigation and, thus, are subject to the work product privilege.

Logan maintains that even if the documents are privileged, he has demonstrated substantial need and undue hardship sufficient to overcome the qualified work product privilege. Commercial Union responds, and the district court agreed, that Logan has failed to demonstrate a substantial need for the documents.

Logan's assertion of substantial need arises from the proof problem inherent in a claim for bad faith. For such a claim, nearly all potential evidence of bad faith lies in the defendant's communications during the period of the allegedly wrongful conduct, and thus Logan argues that preventing him from overcoming the work product privilege and discovering Commercial Union's private communications would deny him access to the only existing proof that Commercial Union acted in bad faith.

There is much to commend in Logan's arguments, and we recognize that allowing a plaintiff to overcome an insurer's work prod-

uct privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action. *See Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 576-78 (9th Cir.1992). "In a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinion of [the insurer's] agents considering the handling of the claim are directly at issue,' " and thus it is clear that "[u]nless the information is available elsewhere, a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim." *Id.* at 577 (quoting *Reavis v. Metropolitan Property & Liability Ins. Co.,* 117 F.R.D. 160, 164 (S.D.Cal.1987)).

On the other hand, a naked claim of bad faith cannot, without more, authorize a fishing expedition into privileged communications. Thus, a mere allegation of bad faith is insufficient to overcome the work product privilege. The plaintiff must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith. Of course, this required showing is not a high hurdle because the plaintiff, without seeing the documents, can only speculate as to their likely contents. He need only show the possibility, not the certainty, that the claim documents contain evidence of bad faith.

In this case, however, the district court conducted an *in camera* examination of each document individually, and it concluded that the documents contained no possible evidence of bad faith whatsoever, stating that "even if totally disclosed, not a single one of these documents would support an argument of bad faith." Given the district court's finding, Logan cannot show substantial need for the requested documents in the preparation of his case, and thus he cannot overcome the work product privilege. We agree with the district court that the magistrate judge clearly erred in determining that the documents sought by Logan, for which Commercial Union claimed work product privilege, were discoverable.

## B. Summary Judgment

We exercise plenary review over a district court's grant of summary judgment, drawing our own conclusions of law and fact from the record before us. *Thiele v. Norfolk & Western Ry. Co.,* 68 F.3d 179, 181 (7th Cir.1995). In reviewing a motion for summary judgment, we must consider all facts in the light most favorable to the nonmovant, resolving all inferences in his favor. *Tolentino v. Friedman,* 46 F.3d 645, 649 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Under FED. R. CIV. P. 56(c), summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law."

The initial burden of production rests with the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(c)). Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be "material." Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant fails to demonstrate a genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party...." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Sokaogon Chippewa Community v. Exxon Corp.,* 2 F.3d 219, 225 (7th Cir.1993), *cert. denied,* 510 U.S. 1196, 114 S.Ct. 1304, 127 L.Ed.2d 655 (1994); *Colosi v. Electri–Flex Co.,* 965 F.2d 500, 503–04 (7th Cir.1992). If no genuine issue of material fact exists, the sole question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011, 1014 (7th Cir.1996).

Logan's primary argument on appeal concerning summary judgment is that Commercial Union failed to satisfy its initial burden of production, which required it to identify those specific portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Logan cites *Russ v. International Paper Co.,* 943 F.2d 589, 591–93 (5th Cir.1991) (per curiam), *cert. denied,* 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992), and *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606–09 (11th Cir. 1991), for the proposition that Commercial Union did not carry its burden.

The courts in *Russ* and *Clark* identify an unfortunately common error in the application of summary judgment review, that of overlooking the movant's initial burden of production where the nonmovant bears the burden of proof at trial. *Russ,* 943 F.2d at 591; *Clark,* 929 F.2d at 607–08. In *Celotex,* the Supreme Court explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

477 U.S. at 322–23, 106 S.Ct. at 2552. The Court took pains to make clear, however, that by this it did not intend to relieve the movant of

> its initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

■ *Id.* at 323, 106 S.Ct. at 2553 (quoting FED. R. CIV. P. 56(c)). The *Celotex* Court decided only that where the movant demonstrates that the nonmovant will be unable to produce any evidence at trial supporting an essential element of a claim for which the nonmovant bears the burden of proof, summary judgment is appropriate even though the movant cannot adduce any affirmative evidence *disproving* the essential claim. *Id.* But even after *Celotex,* an unsupported—or "naked"—motion for summary judgment does not require the nonmovant to come forward with evidence to support each and every element of its claims. *Russ,* 943 F.2d at 591. Only after the movant has articulated with references to the record and to the law specific reasons why it believes there is no genuine issue of material fact must the nonmovant present evidence sufficient to demonstrate an issue for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Logan argues that Commercial Union did not satisfy its initial burden and, therefore, that summary judgment was inappropriate despite his inability to demonstrate a genuine triable question.

Initially, we note that Logan failed to raise this argument before the district court in his response to Commercial Union's motion for summary judgment, and thus he has forfeited it for the purpose of this appeal. However, Logan's argument must also fail because the district court did not misapply the summary judgment standard in the manner cautioned against by the *Russ* and *Clark* courts—i.e., in this case, Commercial Union certainly satisfied its initial burden of production.

In its motion for summary judgment, Commercial Union argued that, as a matter of law on the basis of undisputed facts, Logan had been injured as an employee of Red Ball rather than as an independent contractor. Commercial Union asserted that if the district court agreed that Logan had been an employee of Red Ball as a matter of law, Logan would lack standing for his breach of contract claim and would be unable to demonstrate a Commercial Union duty toward him for his gross negligence and bad faith claims. Commercial Union further pointed out that after ample time for discovery, Logan could adduce no evidence demonstrating that Commercial Union had acted in bad faith or unreasonably delayed in paying Logan's claim (necessary for his contract, gross negligence, and bad faith claims) nor that it had intended to cause him emotional distress. Commercial Union has clearly satisfied its burden by (1) pointing out legal issues that would, if decided in its favor, render all factual questions immaterial and entitle it to judgment as a matter of law, and (2) specifically identifying particular elements of Logan's claims that he would be unable to support with evidence at trial—a failing that would entitle Commercial Union to judgment as a matter of law. Thus, in order to survive summary judgment, Logan was required to come forward with evidence demonstrating a genuine question for trial.

■ Logan's last—and least substantial—argument is that he did in fact present evidence establishing the existence of triable issues and, therefore, that the district court erred by granting summary judgment in favor of Commercial Union. The record on appeal, however, does not bear out Logan's contention. We note at the outset that Commercial Union has spent much of this litigation arguing that Logan was an employee of Red Ball at the time of his injury and, thus, that Commercial Union had no duty to pay Logan's claims in a timely fashion or otherwise. However, we will, as the district court did, assume for the purpose of our summary judgment analysis that Logan was injured as an independent contractor because, even under such an assumption, Logan has failed to present any evidence to support essential elements of his claims.

■ Under Indiana law, if an insurer acts in bad faith in the processing or paying of a claim, the insured party may bring actions for (1) breach of the covenant of good faith and fair dealing that is implied in every insurance contract, and (2) tortious breach of the insurer's fiduciary duty of good faith to its insured. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 518–19 (Ind.1993). Logan's complaint accordingly includes a charge against Commercial Union of breach of contract, seeking ordinary contract dam-

ages, and a charge of tortious bad faith, seeking punitive damages.

 These two counts raise intriguing, but not dispositive, questions of standing. Ordinarily under Indiana law, while an insured may bring breach of contract and breach of fiduciary duty claims against his insurer, an employee may not bring such claims against his employer's workers' compensation insurance carrier. *Stump v. Commercial Union*, 601 N.E.2d 327, 333–34 (Ind. 1992). Only the employer shares a fiduciary relationship—and has privity of contract—with the insurance carrier; the employee, therefore, generally lacks standing to claim that the insurer breached its contractual or fiduciary duties. *Id.*

The independent contractor, however, presents an anomalous situation. The self-employed individual is not only an employee, but is also his own employer. Logan argues that because he is an employer, and because he entered into a contract of insurance with Commercial Union as an employer, he has standing to bring actions for breach of contract and breach of fiduciary duty arising out of that contractual relationship, despite the fact that he is also the injured employee seeking damages. Commercial Union, on the other hand, maintains that although Logan wears the two hats of employee and employer, he should not be allowed for the purpose of standing to wear both hats simultaneously. It contends that because Logan seeks damages as an injured employee, he should not merely by virtue of the fact that he is also his own employer be able to maintain causes of action that would be foreclosed to other, non-self-employed employees.

The question of whether an injured independent contractor may bring actions for breach of contract and breach of fiduciary duty against his insurance carrier has not been addressed by the Indiana courts, and the issue is sufficiently important that, if it were necessary to our decision in this case, it would warrant certification to the Indiana Supreme Court pursuant to 7TH CIR. R. 52 and IND. R. APP. P. 15(O). We need not resort to certification, however, because the standing question is not necessary to our decision. Even if we assume that Logan could properly bring an action for breach of contract and breach of fiduciary duty against Commercial Union, his claims cannot survive summary judgment.

Commercial Union eventually settled its dispute with Logan by paying his claim under the insurance contract, and thus the only possible basis for his breach of contract action is that Commercial Union delayed its payment unreasonably—i.e., that it acted in bad faith when it contested his claim. Of course, bad faith is also an essential element of an action for breach of the fiduciary duty of good faith. But Logan has put forth no evidence whatsoever that Commercial Union acted in bad faith. Logan has offered deposition testimony essentially demonstrating little more than the uncontested fact that Commercial Union initially denied and then disputed his claim. The Indiana Supreme Court, however, has explained that "a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith," even where the insurance company is later shown to be wrong. *Erie*, 622 N.E.2d at 520. "That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *Id.*

Here, Logan informed Commercial Union on two occasions, once by a formal letter from his attorney, that he was employed by Red Ball. As a result, Commercial Union was certainly justified in relying on Logan's own admissions as the basis for investigating and disputing Logan's claim for benefits. That Logan had earlier signed an affidavit claiming to be an independent contractor does not compel a different result: Indiana courts have recognized the "dual capacity" doctrine, *see, e.g., Vincent v. Pursley*, 119 Ind.App. 53, 83 N.E.2d 431 (1949) ("[O]ne may be an independent contractor as regards some phases of his work and at the same time an employee as to other phases. In such a case the employer would be liable for compensation only if the employee were injured while engaged in that phase of the work in which he was an employee."), and thus Commercial Union could have in good

faith maintained that while Logan sometimes acted as an independent contractor, he was injured while acting as a Red Ball employee.

Logan further asserts that once the Indiana board hearing officer determined in December 1990 that Logan had been acting as an independent contractor, Commercial Union was unreasonable in delaying payment for six months; he contends that Commercial Union's failure to pay him immediately is evidence of bad faith. However, Logan ignores the fact that Commercial Union was still attempting to appeal the board officer's decision at the time it offered to settle by paying Logan's claim in June 1991, and thus there was no unreasonable delay because the dispute was still ongoing.

 Finally, Logan claims that Commercial Union's investigation was not sufficiently exhaustive. Under Indiana law, however, "the lack of diligent investigation alone is not sufficient to support an award" for bad faith. *Erie,* 622 N.E.2d at 520 (citing *Continental Cas. Co. v. Novy,* 437 N.E.2d 1338 (Ind.Ct.App.1982)). An insurer may be considered to have acted in bad faith where it "denies liability knowing that there is no rational, principled basis for doing so." *Id.* (citing *Town & Country Mutual Ins. Co. v. Hunter,* 472 N.E.2d 1265, 1268 (Ind.Ct.App. 1985); *Hoosier Ins. Co. v. Mangino,* 419 N.E.2d 978, 983 (Ind.Ct.App.1981)). But here Commercial Union had Logan's own statements as a basis for contesting his claim, and Logan has adduced no evidence demonstrating that Commercial Union's motives were otherwise improper. Thus, Logan has failed to demonstrate a triable issue of material fact with respect to the element of bad faith necessary to his breach of contract and breach of fiduciary duty claims.

Logan's remaining two counts are those which traditionally may be brought by an employee against his employer's workers' compensation insurance carrier. The exclusive remedies provision of IND. CODE § 22–3–2–6 mandates that "[t]he rights and remedies granted to an employee subject to [the Indiana Workers' Compensation Act] on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, . . . at common law or other-

wise, on account of such injury or death . . . ." The Indiana Supreme Court has construed this provision broadly to prevent an injured employee not only from bringing a common law negligence suit against his employer for his work-related injuries, but also from bringing such a suit against "insurance carrier[s] . . . [a]mbulance services, physicians, hospitals, pharmacies, medical device manufacturers," and others "involved in assisting employers in fulfilling their obligations under the worker's compensation laws," even "in the event of additional injuries or harm proximately caused by their actionable conduct." *Stump,* 601 N.E.2d at 331–32.

On the other hand, with respect to workers' compensation insurance carriers, the Indiana Supreme Court has created an exception to § 22–3–2–6 where an insurance carrier's injurious conduct toward the employee rises to the level of gross negligence, intentional infliction of emotional distress, or constructive fraud. *Id.* at 332–33. Relying on this judicially created exception in *Stump,* Logan's complaint alleges that Commercial Union's delay in paying his claim constituted gross negligence and intentional infliction of emotional distress.

 Gross negligence was defined in *Stump* as "the 'intentional failure' to perform a duty 'in reckless disregard of the consequences as affecting the life or property of another,'" *Id.* at 332 n. 5 (quoting BLACK'S LAW DICTIONARY 931 (5th ed. 1979)). Here, Commercial Union's duty to Logan was to handle his claim in good faith, and Logan was required to demonstrate that Commercial Union violated this duty. Additionally, a claim for intentional infliction of emotional distress expressly requires proof that the defendant acted with the intent to cause distress to the plaintiff, an even stronger showing than that the defendant acted in bad faith. But, as discussed above, Logan has failed to present any evidence whatsoever that Commercial Union acted unreasonably or in bad faith in investigating and disputing his claim. Thus, he has failed to demonstrate a triable issue of material fact concerning any of his claims, and the district court was correct in granting summary judgment in favor of Commercial Union.

The judgment of the district court is AF-FIRMED.