**The GOODYEAR TIRE AND RUBBER COMPANY, Plaintiff,**

v.

**CHILES POWER SUPPLY, INC. d/b/a Heatway Systems, Defendant.**

**No. IP 99–82–MISC.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 27, 1999.

**534**

John D. Waller, Wooden & McLaughlin LLP, Indianapolis, IN, James K. Archibald, Venable, Baetjer, Howard & Civilletti, LLP, Washington, DC, Deborah A. Neaubauer, Goodyear Tire & Rubber Company, Akron, OH, Orville L. Reed, III, Buckingham, Doolittle and Burroughs, Akron, OH, Kurtis B. Reeg, Sonnenschein Nath & Rosenthal, One Metropolitan Square, St. Louis, MO, Randall S. Herrick–Stare, Walbert, Dagener & Tucker, P.C., Englewood, CO, Craig A. Marvinney, Ulmer & Berne LLP, Cleveland, OH.

## ENTRY ON PLAINTIFF'S MOTION TO ENFORCE SUBPOENA DUCES TECUM

HAMILTON, District Judge.

Goodyear Tire and Rubber Company is plaintiff in an action pending in the United States District Court for the Northern District of Ohio. Goodyear has filed a motion in this court to compel non-party American States Insurance Company to comply with a Southern District of Indiana subpoena duces tecum dated July 15, 1999. American States objected to the subpoena and has refused to produce some witness statements and summaries of witness interviews, arguing that the documents are protected from discovery because they are attorney work product. As explained below, the court finds that the documents are protected by the work product privilege. The primary motivation for creating the documents was to aid in actual and threatened litigation. In addition, there is no basis for overcoming the privilege in this case. Goodyear has failed to show that it has a substantial need for the documents and that it would suffer undue hardship if required to obtain the relevant information in another manner. The court therefore denies Goodyear's motion to compel.

### Background

Goodyear sued American States' policyholder, Chiles Power Supply, Inc. d/b/a Heatway Systems ("Heatway"), in the United States District Court for the Northern District of Ohio. The lawsuit concerns a type of rubber hose, "Entran II." Pursuant to specifications agreed upon between Goodyear and Heatway, Goodyear manufactured Entran II from approximately 1988 to 1993 and sold it to Heatway for use as a component in radiant heating systems.

Many of those radiant heating systems containing Entran II have failed, and the reasons for the failures are disputed. The lawsuit between Goodyear and Heatway largely centers upon the terms of their contracts and whether Goodyear supplied defective material to Heatway. The actual reasons for the heating systems' failures appear to be highly relevant in that lawsuit.

Goodyear seeks discovery from American States relating to failures of Heatway heating systems because American States insured Heatway against warranty and related claims between August 1, 1993, and August 1, 1997. Heatway's insurance broker, the Ollis & Company insurance agency, received notice of alleged property damage or bodily injury claims arising from Entran II by a letter dated June 26, 1996. On July 1, 1996, Heatway alerted American States not only of imminent individual lawsuits, but also of prospective class action litigation. Reeg Dec. ¶¶ 3–4. The first Entran II lawsuit against Heatway was filed on December 26, 1996.

Numerous additional lawsuits have been filed against Heatway by disappointed buyers, as well as Goodyear's lawsuit in the Northern District of Ohio, filed in January 1997. As Heatway's insurer, American States has investigated the circumstances of at least 600 warranty claims asserted by homeowners who installed Heatway heating systems. As part of this investigation, American States claims personnel or its legal representatives interviewed claimants in person and by telephone. American States made records of those interviews, including some verbatim statements and written reports summarizing the interviews. Goodyear's subpoena directs American States to produce both types of witness statements. Goodyear believes the statements "potentially contain information about damages, and the design, installation, maintenance or oper-

ation of a claimant's radiant hydronic heating system." Pl.Br. at 4. American States has objected to producing these statements because it believes the statements are attorney work-product and therefore are protected from discovery. Additional facts are noted below where relevant.

*Discussion*

■ First recognized by the Supreme Court in the landmark decision of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the standard for the work product privilege is now found in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

A federal court facing a claim of work product protection applies the federal standard contained in Fed.R.Civ.P. 26(b)(3), even in diversity cases. See *Henderson v. Zurn Industries Inc.,* 131 F.R.D. 560, 569 (S.D.Ind. 1990). The parties agree that this court applies the standard within the Seventh Circuit, where the subpoena was issued.

■ For materials to be considered attorney work product under this rule, the person claiming protection must show that the materials were prepared in anticipation of litigation. The party seeking the materials can overcome such protection only if the party "demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the requested information some other way." *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir.1996).

■ The Seventh Circuit has explained that, in determining whether materials were prepared in anticipation of litigation, a court must "look to whether in light of the factual context 'the document can fairly be said to have been prepared or otherwise obtained because of the prospect of litigation.' " *Id.* at 976–77, quoting *Binks Manufacturing, Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1119 (7th Cir.1983). Thus, the court must determine whether "the *primary motivating purpose* behind the creation of a document or investigative report [was] *to aid in possible future litigation.*" *Stout v. Illinois Farmers Ins. Co.,* 852 F.Supp. 704, 706 (S.D.Ind.1994), quoting *Binks,* 709 F.2d at 1119 (emphasis in original).

Goodyear argues that the witness statements compiled by American States are not protected by the work product doctrine because they "were prepared in the ordinary course of American States' business" and not in anticipation of likely litigation. As a liability insurer, American States has a contractual duty to investigate third party claims that may be covered by Heatway's liability policy. Because an insurer's business is to investigate claims that may or may not result in litigation, application of the work product privilege to insurance claims investigations has been frequently litigated. See, *e.g., Logan,* 96 F.3d 971 (7th Cir.1996); *Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau,* 183 F.R.D. 627 (N.D.Ill. 1999); *Stout,* 852 F.Supp. 704 (S.D.Ind.1994); *Harper v. Auto–Owners Ins. Co.,* 138 F.R.D. 655 (S.D.Ind.1991). There is no "bright line rule" marking the boundaries of the privilege in this context. *Stout,* 852 F.Supp. at 707.

When an insurer is in the business of reviewing, paying, and contesting third party claims against its insureds, drawing the line between the "ordinary course of business" and "preparing for litigation" has posed difficulties for courts. In the context of a first party claim by an insured against his insurer, Judge Barker of this court has written that, to establish the basis for the privilege, "an insurer must show a critical factor that made it anticipate litigation (e.g., a threat of litigation) *and* offer specific facts demonstrating that the critical factor did indeed make the

insurer deal with the insured in a different way." *Stout,* 852 F.Supp. at 707. Other courts have found, at least with respect to third party claims, that an insurer's investigation of a claim should be deemed in anticipation of litigation once it is clear that an identifiable party is likely to assert specific claims. See, *e.g., Fontaine v. Sunflower Beef Carrier, Inc.,* 87 F.R.D. 89, 93 (E.D.Mo.1980) (finding that liability insurer's documents were protected when they were prepared after "it was apparent who the plaintiff would likely be, and what the claims would likely concern"); *Almaguer v. Chicago, Rock Island & Pac. R.R., Co.,* 55 F.R.D. 147, 149 (D.Neb.1972) (witness statements gathered by railroad shortly after accident injuring employee were protected: "The anticipation of the filing of a claim against a railroad, when a railroad employee has been injured or claims to have been injured on the job, is undeniable, and the expectation of litigation in such circumstances is a reasonable assumption."). Other courts have applied the privilege more narrowly, reasoning that broad application to investigative materials would relieve insurers of discovery obligations and give them preferred treatment as compared with other litigants. See, *e.g., Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367, 373–74 (N.D.Ill. 1972) (insurance investigator's statement prepared months before insurer assigned attorneys to work on case was not protected by work product privilege).

It is not possible neatly to reconcile all the cases. The Seventh Circuit's approach set forth in *Logan* requires that this court avoid bright line rules and examine the specific facts of the case. In both *Logan* and *Stout,* though, the insurers tried to invoke the work product privilege to prevent disclosure to their own insureds of their investigations of claims by their insureds. See *Logan,* 96 F.3d at 974–75; *Stout v. Illinois Farmers Ins. Co.,* 150 F.R.D. 594, 596 (S.D.Ind.1993) (magistrate judge's entry), *affirmed,* 852 F.Supp. at 705. In *Logan* the insurer succeeded in protecting its documents primarily because the documents in question were created after litigation with its insured had already been filed. In *Stout* the insurer failed to block discovery because the documents in question were created while the insurer was still making its initial decision to approve or deny its insured's claim.

The Seventh Circuit did not address in *Logan* the distinction between first and third party claims. This case does not require the court to decide whether that difference alone should be decisive in evaluating claims of work product protection, although it is one factor in the analysis. American States has made the required showing for work product protection as defined by the Seventh Circuit.

■ First, American States has easily shown that it anticipated litigation when its lawyers and investigators obtained the witness statements in question. By a letter dated June 26, 1996, Heatway's insurance broker, the Ollis & Company insurance agency, received notice of third party property damage or bodily injury claims arising from Entran II. Reeg Dec. ¶ 11. On July 1, 1996, Heatway notified American States of imminent lawsuits threatened by individuals, as well as prospective class action litigation. See Reeg Dec. ¶ 12. On December 28, 1996, the first lawsuit regarding Entran II was filed against Heatway in Colorado. Goodyear then filed its lawsuit against Heatway in January 1997. Presently, fifteen lawsuits are pending against Heatway regarding Entran II. Based on the notice from Ollis & Company, by July 1, 1996, American States was aware of a clear threat of litigation by third parties against Heatway, and American States owed Heatway a duty of defense in such actions. The prospect of litigation included both many individual lawsuits and a threatened class action. Five months after American States received notice of imminent litigation, the first of many lawsuits was filed against Heatway. American States seeks protection only for witness statements that it took after July 1, 1996, so it has shown that when it took the witness statements, it was facing an "articulable claim likely to lead to litigation" and not just a "remote prospect of litigation." See *Logan,* 96 F.3d at 977.

Second, American States has also established that its primary motivation in taking the witness statements was to prepare for litigation. As Judge Barker explained in

*Stout,* an insurer can show its primary motivation by offering specific facts demonstrating that the critical factors (the imminent threat of litigation and the actual filing of a lawsuit) made the insurer deal differently with the insured (or in this case, the claims). See 852 F.Supp. at 707. American States knew no later than July 1, 1996, that it was facing a large number of potential claims against its insured, Heatway. American States' handling of the matter over the intervening three years shows that it gave these claims special treatment. After Goodyear filed its lawsuit against Heatway, American States transferred the defense and handling of all the claims to its regional office in Overland Park, Kansas, and its home office in Indianapolis, Indiana. This transfer was done to coordinate defense strategies, investigation, and coverage analyses. Reeg Dec. ¶ 4. Between February 14–20, 1997, American States hired an attorney to assist in and direct the defense strategies, investigation, and coverage analyses regarding the pending claims. *Id.*

American States took further action on October 5, 1998, when, after an additional six lawsuits had been filed against Heatway, American States assigned all of the Entran II claims and lawsuits to its Central Environmental Claims Unit ("Central ECU") in St. Louis, Missouri, to investigate and implement defense strategies. The Central ECU is a special company unit "designed to analyze, handle and defend major and complex litigation and claims, among others." Reeg Dec. ¶¶ 3, 6, 16. All of these actions taken by American States show that, after American States received clear notice that it and Heatway faced numerous lawsuits from Heatway customers, American States dealt with Entran II claims differently in an effort to prepare for both pending and imminent lawsuits.

█ The difference between first and third party claims is important in addressing an additional argument Goodyear has raised. Goodyear contends that American States used the information in the witness statements to assist in its ordinary investigation, evaluation, and settlement of claims. Citing the "dual purpose doctrine," Goodyear ar-

gues that even if American States somehow used the witness statements to prepare for litigation, its initial purpose for taking the statements was to investigate claims. Under the dual purpose doctrine, a document is not privileged if it was "initially created with a dual purpose and the litigation purpose is not primary...." *Stout,* 852 F.Supp. at 706–07 (footnote omitted).

Goodyear relies heavily on Magistrate Judge Foster's decision in *Harper v. Auto-Owners Insurance* to argue that American States would have taken the witness statements even if no litigation had been threatened. In *Harper,* an insured sued his insurer for bad faith denial of a claim for property damaged by fire. 138 F.R.D. at 658. The insurer had evidence that the fire was incendiary in origin and argued that it anticipated litigation whenever a fire was incendiary in origin. Magistrate Judge Foster rejected the argument, holding that the insurer's investigative records were not subject to the work product privilege and should be presumed not to be privileged when the records pertained to the investigation before the insurer made its final decision to deny the insured's claim. *See id.* at 663 ("It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product. Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim. The converse, of course, is presumed for documents produced after claims denial.").

The court in *Harper* emphasized that it was addressing the "special problem" posed by the routine character of the insurer's investigation of first party claims, that is, claims submitted by its own insureds. 138 F.R.D. at 662. This case is distinguishable because the claims here were third party lawsuits (both threatened and pending) asserted against American States' insured. The difference is important. As the court explained in *Weitzman v. Blazing Pedals, Inc.,* which involved a third party claim:

When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes him a duty to adjust his claim in good faith. There is no initial contemplation of litigation....By contrast, when a liability insurer investigates a third party claim, the investigation is made in anticipation of claims which, if denied, likely will lead to litigation....The recognition of this possibility provides the insurer the impetus to gather information regarding the circumstances of the claim.

151 F.R.D. 125, 126 (D.Colo.1993) (internal citations omitted) (upholding insurer's claim of work product privilege). The author of *Harper*, Magistrate Judge Foster, recognized the same distinction in *Henderson*. He suggested that, although Rule 26(b)(3) and many cases do not expressly distinguish between first and third party claims, the difference could be taken into consideration because "one would expect there to be more litigation on third-party claims than on direct first-party action contract actions, with a resultant increased anticipation of such litigation in the third-party context." 131 F.R.D. at 571, n. 11.

■ The difference between first and third party claims is important in preserving the underlying purpose of the work product privilege. If the witness statements that American States took in investigating the claims against Heatway were not protected work product, then a homeowner suing Heatway should also be entitled to obtain discovery of all the statements from American States. If a document is protected by the work product privilege, it is protected in any litigation, not only in the litigation for which the document was prepared. See *Federal Trade Comm'n v. Grolier*, 462 U.S. 19, 25–27, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983); *Buckner v. Internal Revenue Service*, 25 F.Supp.2d 893, 899 (N.D.Ind.1998); *Jumper v. Yellow Corp.*, 176 F.R.D. 282, 286 (N.D.Ill. 1997).[1] Conversely, if the witness statements were held not protected in this case, Goodyear would be free to turn them over to persons suing Heatway and American States.[2] That prospect of "freeloading," by both the direct and indirect routes, creates exactly the types of risks and incentives that led the Supreme Court to recognize the work product privilege in *Hickman v. Taylor*. See 329 U.S. at 511, 67 S.Ct. 385.

For these reasons, the court finds that American States' primary motivation in taking the witness statements was to prepare for litigation that had already been threatened or filed. American States has met the requirements of the dual purpose doctrine. Regardless of whether the statements were also used to help investigate and settle claims, all the witness statements taken by American States after July 1, 1996 are protected by the work product doctrine.[3]

■ To overcome the protection of the work product doctrine, Goodyear must show that it has a substantial need for the witness statements and that it would suffer undue hardship if it were required to obtain the information in another manner. *Logan*, 96 F.3d at 976. Goodyear has failed to meet this burden. Goodyear argues that it has a substantial need for the statements because they "were taken much closer in time to the incidents involved in the alleged loss, when

1. Goodyear argues without relevant citation that work product protection "seems wholly out of place here, as there is no litigation between Goodyear and American States regarding these issues, nor is Goodyear aware of any litigation involving Entran II to which American States is a party." Pl.Br. at 5. This argument overlooks *Grolier* and the cases applying work product protection regardless of the status of the litigation for which a document was prepared.

2. The court has not been advised that any protective order would bar such disclosure, and the court assumes that the exception in Rule 26(b)(3) for a party's own statement would not apply.

3. Goodyear has suggested in its brief that Judge Polster of the Northern District of Ohio has rejected, or at least narrowed, similar work product claims by Heatway's other insurers. There is no indication, however, that Judge Polster issued an order to that effect, nor is there a transcript of the conference in question. Letters by counsel submitted by Goodyear reflect disagreement as to what the court actually decided. More important, American States did not participate in that conference and is not subject to the jurisdiction of the Northern District of Ohio with respect to this dispute.

the witnesses' memories were assumedly more fresh and complete." Pl. Reply Br. at 9. Goodyear also argues that it needs the statements because it was unable to undertake its own investigation at the time the statements were taken because it was not informed of the claims. Finally, Goodyear asserts that it "would face enormous difficulties in recreating the material" requested because there are over 600 claims that have been investigated over several years. *Id.*

Almost three years have elapsed since January 1997 when Goodyear filed its declaratory judgment lawsuit against Heatway. Although Goodyear claims it was unable to undertake its own investigation because it was not informed of the claims, Goodyear must have been aware of at least some of the claims when it filed its lawsuit against Heatway. Goodyear also has not offered any evidence to show that it was prevented from ascertaining the names and addresses of the claimants. The evidence shows that the names and addresses have been made available to Goodyear because Heatway has turned over all of its claim files to Goodyear.

The court understands Goodyear's concern that the witnesses' memories may not be as fresh today as they were two or three years ago. But Goodyear could have used available discovery methods much earlier to obtain the desired information from the claimants. Why Goodyear chose not to do so is unclear to the court, which has not presided over the case, but Goodyear's delay in seeking the information does not show substantial need justifying the disclosure of attorney work product.

Because this case is set for trial in January 2000 in Ohio, Goodyear also argues that it would be unduly burdensome to attempt to interview all of the 600 claimants between now and the trial. Goodyear has known for many months about this trial date, and as explained above, could have acted much earlier to obtain this information. Thus, Goodyear has failed to show that obtaining the information would be unduly burdensome.

In summary, this is not a case where the witnesses are unknown or unavailable. *See Scurto v. Commonwealth Edison Co.*, No. 97 C 7508, 1999 WL 35311, at *2 (N.D.Ill. Jan. 11, 1999) (explaining that burden to obtain attorney work product is "a difficult burden to meet, and is likely to be satisfied only in 'rare situations' such as those involving witness availability."). Goodyear is asking for documents containing recorded or summarized statements of potential witnesses whom Goodyear itself could have contacted and interviewed. This requested information is classic work product under the Supreme Court's landmark decision in *Hickman.* The court declines to permit Goodyear to "freeload" off of the work performed by American States in preparing for litigation.

### Conclusion

The witness statements taken by American States after July 1, 1996 are protected by the work product doctrine because the primary motivation behind obtaining the statements was to aid in actual and threatened litigation. The witnesses are and have been available for Goodyear to contact in an effort to obtain the information contained in American States' documents. Therefore, Goodyear has failed to show that it has a substantial need for the statements and would be unduly burdened if forced to obtain the information from the witnesses. Because of this, the court hereby DENIES Goodyear's motion to compel American States to comply with the July 15, 1999 subpoena duces tecum.

So ordered.