**Jeremy M. LONG and Pennae Long, Plaintiffs,**

v.

**ANDERSON UNIVERSITY, et al., Defendants.**

**No. IP01–0290–C–T/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

Oct. 30, 2001.

Dana Childress–Jones, Law Office of Dana Childress–Jones, Swaray E. Conteh, The Law Office of Swaray E. Conteh, Indianapolis, IN, for plaintiffs.

James P. Cavanaugh, III, Gaston, Cavanaugh & Hamilton, Indianpolis, IN, Robert A. Smith, Smith & Wade, Carmel, IN, Thomas E. Wheeler, II, Locke Reynolds LLP, Indianapolis, IN, for defendants.

## ORDER DISCUSSING PLAINTIFFS' MOTION TO COMPEL

BAKER, United States Magistrate Judge.

### I. Background

Plaintiff Jeremy Long, a former student athlete at Anderson University, and his mother bring this action against Anderson University, its dean of students H.L. Baker, director of human resources Denise Kriebel, and director of multicultural student services Cynthia Casey for alleged violations of Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for an alleged conspiracy to violate J. Long's civil rights under 42 U.S.C. § 1985 and 42 U.S.C. § 1986, and under various common law tort theories.

The focus of the present discovery dispute revolves around Plaintiffs' request for production of documents number two. In that request, Plaintiffs seek documents relating to the internal investigation conducted by Defendants of J. Long's complaints to the university of harassment and discrimination, including written statements of witnesses, notes of interviews of witnesses, tape recordings and transcriptions thereof, reports regarding the results of any investigations, and various correspondence between parties involved in the investigation received from or sent to any person other than Defendants' counsel.

Defendants claim the Court should deny Plaintiffs' motion to compel for three reasons. First, Plaintiffs did not comply with Local Rules 26.2(b) and 37.1 in filing their motion and brief. Second, Defendants state the documents Plaintiffs request were "prepared in anticipation and for the sole purpose of litigation," thus invoking the work product doctrine. (Defs.' Opp. to Pls.' Mot. to Compel, pg. 3–4). These documents include[1]:

- Request No. 2(b): (1) investigative notes/documentation prepared by Kriebel; (2) investigative notes prepared by Baker; (3) investigative notes prepared by Sena Landey, vice president of finance and treasurer of the university, all at unknown dates.

- Request No. 2(d): Transcripts of an interview by Bill Adrian of Utica Insurance Company.

- Request No. 2(e): A summary report/documents by Kriebel created at an unknown date;

- Request No. 2(i): Investigative notes of Kriebel, Landey, and Baker, documents also encompassed in Request No. 2(b);

(Pls.' Brief in Supp. of Mot. to Compel, pg. 3).

---

1. The documents Defendants withhold due to their assertion of a privilege are set forth in Defendants' *Vaughn* index, the same documents Defendants withhold based on the work product doctrine. Within the index, Defendants categorize the documents as responsive to Request Nos. 2(b), (d), and (e). Documents responsive to Request 2(i) encompass Defendants' response to Request No. 2(b). In Plaintiff's motion to compel, they state Defendants refuse to respond to Request No. 2(a)-(e), and 2(g)-(k). (Pls.' Mot. to Compel., ¶ 2). However, it is apparent from Defendants' *Vaughn* Index that the only documents withheld responsive to Request No. 2 are set forth in the index. Although it first appears that Defendants are not addressing Request Nos. 2(a), (c), (g), (h), (j), and (k) in its opposition brief, any responsive documents in these requests are set forth in the index. Therefore, the Court will utilize this index in determining whether Defendants properly asserted a privilege in withholding responsive documents.

Third, Defendants assert the attorney client privilege on the following items within Request No. 2:

- H.L. 0020: 11/12/00 e-mail from Kriebel to Baker regarding her conversations with the university's counsel setting forth his legal advice;

- H.L. 0036: 12/04/00 "summary report" prepared with counsel and Kriebel;

- H.L. 0038–0039: A draft answer to the paragraphs in Plaintiffs' complaint prepared by Baker for legal counsel;

- Kriebel 0043–0047: "Investigation conclusions" and "Codes used in Investigation Notes" prepared for legal counsel;

- Kriebel2 0001–0012: 5/01/01 letter from Kriebel to legal counsel relating to discovery requests;

- Kriebel2 0013–0015: 4/23/01 written statement of Linda Lewis prepared for legal counsel; and

- Utica 0001–0013: 12/20/00 recorded statement of Kriebel taken by Utica Insurance Company. (also responsive to Request No. 2(d))

*Id.* at p. 13.

## II. Discussion

### A. Plaintiffs' Procedural Defects

■ Defendants correctly state that Plaintiffs did not comply with the Local Rules of the Southern District of Indiana in filing their motion to compel. Local Rule 26.2, entitled "Filing of Discovery Materials," in subsection (b) states in pertinent part: "If disclosures, interrogatories, requests, answers, responses or depositions are to be used at trial or are necessary to a pretrial motion which might result in a final order on any issue, the portions to be used shall be filed with the Clerk at the onset of the trial or at the filing of the motion insofar as their use can be reasonably anticipated." S.D.Ind. L.R. 26.2.

Local Rule 37.1 contemplates the attorneys making attempts at resolution before seeking court intervention and by filing a statement with the court demonstrating compliance thereof. It states in pertinent part: "[t]he court may deny any motion ... unless counsel for the moving party files with the Court, at the time of filing of the motion, a separate statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing attorney(s) on the matters set forth in the motion." S.D. Ind. L.R. 37.1.

■ In this case, Plaintiffs violated both local rules by failing to attach the requisite supporting documentation required by L.R. 26.2 [2] and by not filing a statement demonstrating their counsel's informal attempts at resolving the discovery dispute before seeking court intervention. These failures, standing alone, could entitle Defendants to the Court's denial of the motion. Failure to comply with the local rules is not merely a "harmless technicality," but can be a "fatal" mistake. *Servin v. GATX Logistics, Inc.,* 187 F.R.D. 561, 563 (N.D.Ill.1999), quoting *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923 (7th Cir.1994). However, "[w]here a previous error is the result of negligence or other nonculpable conduct, and when a motion involves important issues which may affect the outcome of case, like [a] motion to compel, the dispute is better decided on the merits than on procedural

---

**2.** However, concurrent with their opposition brief, Defendants submitted as Exhibits 1 and 2 "Plaintiffs' First Request For Production of Documents" and "Defendant Anderson University's Response to Plaintiffs' First Request For Production of Documents," the documents Plaintiffs failed to submit in compliance with Local Rule 26.2.

grounds." *Fisher v. National Railroad Passenger Corporation,* 152 F.R.D. 145, 149 (S.D.Ind.1993) (Tinder, J.). Therefore, the Court will address the arguments on their merits.

### B. Attorney Client Privilege

█ The attorney-client privilege protects confidential communications made by a client to his lawyer where legal advice is sought from a professional legal advisor in his capacity as such. *Rehling v. City of Chicago,* 207 F.3d 1009, 1019 (7th Cir.2000), citing *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997). The inquiry into whether documents are subject to a privilege is a highly fact-specific one. "Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies." *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir.2000), quoting *Holifield v. United States,* 909 F.2d 201, 204 (7th Cir.1990). An assertion of privilege therefore must be made on a document-by-document basis. *See United States v. White,* 970 F.2d 328, 334 (7th Cir.1992).

█ The Seventh Circuit adopted Professor Wigmore's standards for parties to assert the attorney client privilege. The elements are: (1) where legal advice was sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor, (8). except the protection be waived. *Evans,* 113 F.3d at 1461, citing 9 J. Wigmore, Evidence § 2292 (McNaughton rev.1961). *See also Lahr v. State* 731 N.E.2d 479, 482 (Ind.App.2000).

█ As the parties seeking to establish the privilege, Defendants bear the burden of demonstrating that all of the requirements for invoking the attorney-client privilege have been met. *See Evans,* 113 F.3d at 1461; *Owens v. Best Beers of Bloomington, Inc.,* 648 N.E.2d 699, 702 (Ind.Ct.App.1995).

Since the Court must conduct its analysis on a document-by-document basis, the Court addresses each document separately to determine whether the attorney-client privilege applies.

### 1. Document H.L. 0020

█ Document Bates stamped H.L. 0020 is an e-mail from Kriebel to Baker regarding a conversation she had with the university's legal counsel and his legal advice. This issue of whether communication between two agents of a corporation regarding advice of legal counsel and the applicability of the attorney-client privilege was recently discussed in *McCook Metals L.L.C. v. Alcoa Inc.,* 192 F.R.D. 242, 254 (N.D.Ill.2000). In that case, the court noted "[m]anagement should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege." Therefore, Kriebel's correspondence to Baker is communication protected by the attorney-client privilege. *See also Weeks v. Samsung Heavy Indus. Co.,* 1996 WL 341537, *4 (N.D.Ill.1996) ("privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation."). *Accord Johnson v. Sea–Land Service, Inc.,* 2001 WL 897185, *2 (S.D.N.Y. Aug.9, 2001) ("[t]he attorney-client privilege affords confidentiality to communications *among clients, their attorneys, and the agents of both,* for the purpose of seeking and rendering an opinion on law or legal services, or assistance in some legal proceeding, so long as the communications were intended to be, and were in fact, kept confidential.") (emphasis added). Therefore, document H.L. 0020 is protected by the attorney-client privilege.

### 2. Document H.L. 0036

█ Document Bates stamped H.L. 0036 encompasses a "summary report" prepared by counsel and Kriebel. This summary report is also protected by the attorney-client privilege because communications

from client to counsel requesting legal advice in confidence and which formulate a legal strategy clearly fall within the privilege. *Burroughs Wellcome Co. v. Barr Laboratories, Inc.*, 143 F.R.D. 611, 620 (E.D.N.C. 1992). *See also Lorenz v. Valley Forge Ins. Co.*, 1984 WL 2234, *5 (N.D.Ind.1984) ("documents prepared by an attorney to record confidential communications with his client are protected by the attorney-client privilege"). As a result, document H.L. 0036 need not be produced.

### 3. H.L. 0038–0039, Kriebel 0043–0047, and Kriebel2 0001–0012[3]

■ These documents include a draft response to Long's complaint filed in federal court prepared by Baker and sent to legal counsel, investigative conclusions and codes prepared by counsel, and a letter by Kriebel to counsel regarding discovery requests. These documents contain the attorney's and client's mental impressions, strategies, and either solicit or provide legal advice. These documents are also shielded by the attorney-client privilege. *See e.g., Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach*, 1993 WL 179789, *7 (N.D.Ill.1993) ("Attorney-client privilege claims would protect only documents, from client to lawyer or from lawyer to lawyer or from lawyer to client, whose production would reveal the content of privileged communications from clients made for the purpose of securing legal advice or services."). H.L. 0038–0039, Kriebel 0043–0047, and Kriebel2 0001–0012 (if it has not already been produced) are the very type of communications that the attorney-client privilege prevents an opposing party from obtaining in the discovery process, and are not discoverable by Plaintiffs.

### 4. Kriebel2 0013–0015

■ Plaintiffs seek production of this written statement of Linda Lewis prepared for legal counsel. Lewis' relationship to Defendants and the information she possesses

about the claims and defenses in this case is unknown. In any event, the invocation of the attorney-client privilege to shield this document fails since the statement contains information relevant to plaintiffs' claims, and "for the obvious reason that witnesses' statements are not confidential communications and therefore are, by their very nature, not within the ambit of the attorney-client privilege." *Daniels v. Hadley Memorial Hospital*, 68 F.R.D. 583, 586 (D.D.C.1975), quoting *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Therefore, documents Bates stamped Kriebel2 0013–0015 shall be produced.

### 5. Utica 0001–0013

■ Finally, Plaintiffs move to compel production of a transcript of an interview taken by Bill Adrian from Defendants' insurance carrier, Utica Insurance Company. The Indiana Supreme Court addressed the issue of whether a statement given by an insured to its insurance company is protected by the attorney-client privilege in *Richey v. Chappell*, 594 N.E.2d 443 (Ind.1992).

In that case, the Court noted "where the policy of insurance requires the insurer to defend claims against the insured, statements from the insured to the insurer concerning an occurrence which may be made on the basis of a claim by a third party are protected from disclosure." Therefore, Kriebel's statement to the insurance company falls under the privilege and is not discoverable. *Id.* at 446.[4]

### C. Work Product Doctrine

■ The work-product doctrine, like the attorney-client privilege, provides an exception to the otherwise liberal discovery rules. *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 2001 WL 492479, *2 (N.D.Ill. May 9, 2001). It is distinct from, and broader than the attorney-client privilege. *Smithkline Beecham Corp. v. Apotex*

---

**3.** The Court notes that on pages 5–6 of Defendants' opposition brief, Defendants state they produced documents Bates stamped Kriebel2 0004–0012. However, on page 13 of their brief, they assert a privilege on documents Bates stamped Kriebel2 0001–0012. Therefore, this issue may be moot if these documents were produced to Plaintiffs.

**4.** These documents are also protected under the work product doctrine. See Section C–2, *infra*.

*Corp.*, 193 F.R.D. 530, 539 (N.D.Ill.2000). The work product doctrine developed "to protect the work of an attorney from encroachment by opposing counsel." *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369, ——, 2001 WL 1246708, *3 (N.D.Ill. 2001), quoting *Smithkline*, 193 F.R.D. at 539. To claim protection of the doctrine, a party must demonstrate that the materials in question would otherwise be discoverable and were prepared in anticipation of litigation. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir.1996). The burden is on the discovery opponent to establish that the work product doctrine immunizes the documents at issue from discovery. *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 499 (N.D.Ill.2001), citing *U.S. v. Hamilton*, 19 F.3d 350, 354 (7th Cir.1994).

The work product doctrine has its origins in the case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and was subsequently codified in Federal Rule of Civil Procedure 26(b)(3).[5] The work product doctrine protects from disclosure documents and tangible things otherwise discoverable that were "prepared in anticipation of litigation." Fed.R.Civ.P. 26(b)(3); *Trustmark Ins. Co. v. General & Cologne Life Re of America*, 2000 WL 1898518, *3 (N.D.Ill. Dec.20, 2000).

 The threshold determination is "whether the documents sought to be protected were prepared in anticipation of litigation or for trial." *Caremark, Inc., v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 614 (N.D.Ill.2000), citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). This qualified privilege can be rebutted, however, "if the party seeking production demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the re-

quested information some other way." *Logan*, 96 F.3d at 976.

 Not all documents generated from an internal investigation are protected by the work product doctrine "simply because a company's internal investigation is coexistent with a present or anticipated lawsuit that is the same subject matter of the litigation." *Caremark*, 195 F.R.D. at 614–615. Therefore, documents created as a result of the discovery opponent's ordinary course of business "that would have been created irrespective of litigation are not under the protection of the work product doctrine." *Id.*, citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998). *See also* the Advisory Committee Notes to Rule 26(b)(3).

In this case, Plaintiffs seek the production of documents relating to the internal investigation of J. Long's complaints of sexual harassment and the investigation which ultimately led to the termination of Casey. Plaintiffs claim the documents in question were prepared in the ordinary course of Defendants' business because they relate to the investigation of J. Long's complaints of sexual harassment rather than being prepared in anticipation of litigation. (Pls.' Mot. to Compel, pg. 4–5). Further, Plaintiffs state they have a "substantial need for the documents" and will "suffer undue hardship if they were required to obtain the information in another manner." *Id.* at 6. Defendants seek protection under the work product doctrine, claiming the documents in question were "prepared in anticipation of litigation" due to Plaintiffs and their counsel's threats of litigation, and that Plaintiffs cannot demonstrate "substantial need" in order for the Court to compel their production. *Id.* at 17–18, 20. The Court addresses each request in dispute separately below.

5. Federal Rule of Civil Procedure 26(b)(3) states: [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

## 1. Request No. 2(b), 2(e), and 2(i)

██ Request Nos. 2(b), 2(e), and 2(i) seek investigative notes/documentation prepared by Kriebel, Baker, and Landey at unknown dates and a summary report of Kriebel, also at an unknown date. As a preliminary matter, Defendants fail to state with particularity the exact nature of the documents in dispute, including the dates they were created and how they relate to the internal investigation conducted by the university. *Cf. Ash v. Theros Intern. Gaming, Inc.*, 2001 WL 648632, *2 (N.D.Ill. Jun.6, 2001) (To establish the protection of a privilege, descriptions of privileged documents must contain sufficient information for the court to ascertain the content of the documents; burden remains with the non-producing party to "demarcate a set of documents clearly entitled [to the privilege] without further inquiry to confidential status."). *See also Citizens First National Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Therefore, Defendants have failed to come forward with any basis to conclude other than that they were generated as a result of the university's investigation of J. Long's complaints of sexual harassment in the mid-November to early December 2000 time frame.

Although the parties don't submit to the Court a copy of the university's harassment policy, Defendants acknowledge that there was an investigation into J. Long's complaints upon the university's discovery of them on November 14, 2001. (Defs.' Opp., pp. 6–11). It is reasonable to believe that the policy set forth reporting procedures which trigger an investigation. In fact, one of Defendants' affirmative defenses is that J. Long "failed to take advantage of a publicized complaint policy." (See Defendants; legal theories in the case management plan tendered with the Court on May 25, 2001). The university's investigation led to Casey's termination on December 1, 2000. (Pls.' Brief in Supp. of Mot. to Compel, Ex. 4; Defs.' Opp. pp. 10–11). Kriebel acknowledges this fact in a December 20, 2000 letter she sent to the university's insurance carrier, stating, "In November, we received a complaint about Miss Casey from a male student.

We began an immediate investigation ..." (Kriebel Affid., ¶ 12, Ex. D). Although counsel advised Defendants throughout the process of their investigation, it took place as a result of the university's harassment policy, thus as an ordinary and customary step in conducting its business. Further, even though counsel for Plaintiffs did threaten litigation if the potential claims were not resolved, the mere anticipation of litigation does not shield these documents from production. *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 87 (N.D.Ill.1992), citing *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 660 (S.D.Ind.1991) (Foster, M.J.) ("the fact that litigation ensues or a party retains an attorney, initiates an investigation, or engages in negotiations over a claim is not determinative as to whether litigation is anticipated"); *Binks Manufacturing Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983) (the mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege). Therefore, Plaintiffs are entitled to the production of these documents relating to Defendants' internal investigation of J. Long's complaints. Therefore, documents Bates stamped Kriebel 0002–0013, 0015–0042, H.L. 0002–0013, 0015–0016, 0018–0019, 0022–0029, 0032–0034, 0037, Landey 0002–0020, and Kriebel2 0013–0081 shall be produced.

## 2. Request No. 2(d)

██ Request No. 2(d) is responsive to a transcript of an interview conducted by Adrian of Utica Insurance Company, the same statement discussed in Section B5 of this Order. In addition in holding that this statement is protected by the attorney-client privilege, the Court also finds this statement constitutes work product. The issue of whether witness statements secured by an insurer after being notified of a lawsuit are subject to discovery under the work product doctrine was discussed in *Goodyear Tire and Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532 (S.D.Ind.1999) (Hamilton, J.). In that case, the district court held that witness statements taken by an insurance company in regard to a third party claim were in

anticipation of litigation since their primary motivation for taking the statements was to prepare for litigation. *Id.* at 536–37. Although Defendants fail to provide the dates on which the interview was conducted, the evidence before the Court shows that Defendants forwarded a potential claim to its insurance carrier on December 20, 2000. (Kriebel Affid., ¶ 12, Ex. D). Therefore, logic would follow that the interviews conducted by Adrian did not take place until after this date. By December 20, Casey's employment was terminated, the university's internal investigation of J. Long's complaint had concluded, and any hopes of the parties resolving the case before litigation abandoned. (See time line set forth in Def. Opp. pp. 6–11). As a result, the Court finds that the statements compiled by Defendants' insurance carrier were obtained in anticipation of litigation.

■ Plaintiffs may still discover these statements, however, if they demonstrate a "substantial need" for the documents and that they would suffer "undue hardship" if they were required to obtain the information in another manner. *Logan,* 96 F.3d at 976. However, Plaintiffs fail to meet this burden. They may discover the names of the individuals Adrian interviewed and either conduct their own witness interviews or take depositions of any relevant witnesses. Plaintiffs fail to demonstrate an undue hardship simply because they must conduct their own witness interviews or take depositions to obtain the requested information. Defendants' validly assert the work product doctrine in shielding documents Bates stamped Utica 0001–00013 compiled by Adrian.

## III. Conclusion

Accordingly, Plaintiffs' motion to compel discovery is GRANTED in part, DENIED in part. The following documents shall be produced within fifteen days of the entry of this Order.

Kriebel: 0002–0013, 0015–0042

H.L.: 0002–0013, 0015–0016, 0018–0019, 0022–0029, 0032–0034, 0037

Landey: 0002–0020

Kriebel2: 0013–0081

*So ordered.*