**IDEAL ELECTRIC COMPANY, Plaintiff,**

v.

**FLOWSERVE CORPORATION and Lake Mead Constructors, Defendants.**

Gilbert Western Corp. and Kiewit Western Co., Delaware corporations doing business as Lake Mead Constructors, a joint venture, Counterclaimants,

v.

Ideal Electric Company, Counterdefendant.

Gilbert Western Corp. and Kiewit Western Co., Delaware corporations doing business as Lake Mead Constructors, a joint venture, Cross-claimants,

v.

Flowserve Corporation, a New York corporation, Safeco Insurance Company of America, a Washington corporation, Cross-defendants.

Flowserve Corporation, et al., Third–Party Plaintiff,

v.

Travelers Casualty & Surety Company Of America, Third–Party Defendant.

No. CV–S–021092–DAE(LRL).

United States District Court, D. Nevada.

July 6, 2005.

William Urga, Jolley Urga Wirth & Woodbury, Las Vegas, NV, Jeffrey Golenbock, Golenbock, Eiseman, Assor, Bell & Peskoe, New York, NY, for Plaintiff Ideal Electric Company.

George Ogilvie, McDonald Carano Wilson, Las Vegas, NV, Leroy Gire, Pro Hac Vice Firm, Glendale, CA, for Defendant Lake Mead Constructors.

Corby Arnold, Corby D. Arnold, P.C., Las Vegas, NV, Christopher Bechhold, Thompson Hine & Flory LLP, Cincinnati, OH, for Defendant Flowserve Corp.

## ORDER DENYING FLOWSERVE'S OBJECTION TO NOVEMBER 2, 2004 ORDER BY MAGISTRATE JUDGE

DAVID ALAN EZRA, Chief Judge.

The Court received Flowserve Corporation's Objection to Order of United States Magistrate Judge Regarding Affidavit of John Jennings ("Order"). After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Flowserve's Objection to the November 2, 2004 Order of the Magistrate Judge.

## BACKGROUND

On June 2, 2003, Defendant/Cross–Claimant/Third–Party Plaintiff Flowserve Corporation ("Flowserve") moved for partial summary judgment on its First Claim for Relief against Lake Mead Constructors ("LMC") and on all Causes of Action contained in LMC's Cross–Claim against Flowserve on the issue of whether LMC is legally entitled to collect any liquidated damages from Flowserve.

Flowserve deposed LMC employee John Jennings on July 10, 2003. Jennings testified that LMC's counsel prepared an initial draft of his affidavit to which Jennings made changes. (Jennings Dep. 7/10/03 at 21–22.) According to Flowserve, during the course of his deposition, Jennings recanted portions of his affidavit testimony, admitting that no representative of Southern Nevada Water Authority ("SNWA") ever stated in negotiations to resolve contract disputes between LMC and SNWA that the authority intended to collect liquidated damages against LMC. (Objection at 1.) Flowserve inquired further about the drafts of Jennings' affidavit, but LMC instructed Mr. Jennings not to answer specific questions regarding whether certain statements contained in the final version of the affidavit filed with the Court were in the drafts. (Jennings Dep. 7/10/03 at 25.)

On August 12, 2003, Flowserve filed a Motion to Compel and Request for Sanctions Re: John Jennings. Flowserve sought to compel LMC to do the following: (1) produce all of Jennings' draft affidavits, and (2) reconvene Jennings' deposition so that Jennings can answer questions regarding the drafts of his affidavits. On January 26, 2004, the Magistrate Judge granted Flowserve's Motion, finding that LMC did not meet its burden of demonstrating that the draft affidavits are subject to attorney-client or work product privileges.

LMC objected to the January 26, 2004 Order of the Magistrate Judge on February 13, 2004. On February 23, 2004, the Court vacated the portion of the January 26 Order directing that LMC produce the Jennings' draft affidavits and related testimony. The Court found that in order to fully consider LMC's allegation that the draft affidavits

contain privileged information, the Magistrate Judge must conduct an *in camera* review of the contested documents. (Order Den. LMC's Obj'n. to Jan. 26, 2004 Order at 6–7.) On March 3, 2004, LMC, in accordance with the Court's Order, submitted three separate drafts of the Jennings affidavit for the Magistrate Judge's review.

Flowserve filed a response to this Court on March 5, 2004, reasserting its motion to compel filed August 12, 2003(# 84), reply memorandum in support of motion to compel filed September 30, 2003 (# 103), and response to LMC's objection to this Court's order compelling production filed February 13, 2004.

On November 2, 2004, the Magistrate Judge denied Flowserve's Motion to Compel and Request for Sanctions Re: John Jennings (# 84). After carefully reviewing the draft affidavits, the court found that they are not discoverable.

Flowserve filed the present objection to the November 2, 2004 Order of the Magistrate Judge on November 12, 2004.

## STANDARD OF REVIEW

■ A district court may only set aside a magistrate judge's determination of a pretrial matter, subject to certain enumerated exceptions, if it finds the order to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Under the Local Rules, "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to [28 U.S.C. § 636(b)(1)(A) ] where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law." L.R. IB 3–1(a). Thus, the district judge must affirm the magistrate judge unless it is left with the "definite and firm conviction that a mistake has been committed." *Burdick v. Comm'r*, 979 F.2d 1369, 1370 (9th Cir.1992). The reviewing court may not simply substitute its judgment for that of the deciding court. *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir.1991).

## DISCUSSION

Flowserve Corporation objects to the provision in the Order of the United States Magistrate Judge filed November 2, 2004 ("Order") finding the drafts of John Jennings' affidavit subject to privilege and, thus, not discoverable. Flowserve claims that the draft affidavits are not protected by attorney-client privilege, nor do they constitute work product. The Jennings' affidavit was prepared in connection with Lake Mead Corporation's ("LMC") Opposition to Flowserve's Motion for Partial Summary Judgment and in support of LMC's Countermotion for Partial Summary Judgment.

Flowserve contests several findings made by the Magistrate Judge in the instant motion: First, according to Flowserve, the Order does not specify whether the Magistrate Judge concluded the draft affidavits are protected by attorney-client privilege, the work product doctrine, or both. Further, Flowserve states that the Order does not acknowledge Flowserve's contention that any privilege that may have existed was waived when LMC filed the affidavit with the Court.

Flowserve requests that the Court overrule the Order and compel production of the drafts, as well as reopen Jennings' deposition to allow questioning regarding the drafts. Flowserve further requests that even if the Court finds the existence of privilege, that the Court perform its own *in camera* review of the drafts and, should it find the existence of a privilege not waived by LMC, order production of copies of the drafts with any information deemed by the Court to be privileged and redacted by the Court.

A. *The draft affidavits are protected by the attorney-client privilege.*

■ In its Objection to the Magistrate Order ("Objection"), Flowserve claims that the Magistrate Judge erroneously assumed that, because the draft affidavits contain communications between Jennings and LMC's counsel, they are necessarily privileged. Flowserve's Objection does not contain any objection to the Magistrate's factual finding that "[t]he draft affidavits also contain communications between Jennings and counsel with respect to how the facts should be presented, including changes to the drafts." Rather, Flowserve contends that not all communications between an attorney and client are protected from disclosure under attorney-client privilege, and moreover,

that the draft affidavits at issue do not relate to a request for legal advice but to facts that Jennings and LMC intended to disclose to the Court.

■ The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996) (citing *In re Grand Jury Investigation (Corp.)*, 974 F.2d 1068, 1070 (9th Cir.1992)). Flowserve claims that in accordance with *Clarke v. Am. Commerce Nat'l Bank*, not all communications between an attorney and client are protected from disclosure under attorney-client privilege. 974 F.2d 127, 129 (9th Cir.1992); (Objection at 3). This Court concurs, finding that under *Clarke*, the attorney-client privilege protects only those communications necessary to obtain legal advice. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Hirsch*, 803 F.2d 493, 496 (9th Cir. 1986). Flowserve further argues, however, that the draft affidavits at issue are not a request for legal advice but instead relate to facts that Jennings and LMC intended to disclose to the court. This Court disagrees.

■ Attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation. *Chen*, 99 F.3d at 1501. "If a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *Id.* Such presumption is rebutted "when the facts show that the lawyer was 'employed without reference to his knowledge and discretion in the law.'" *Id.* Moreover, a matter committed to a professional legal adviser is "prima facie so committed for the sake of the legal advice ...," and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice. *Id.* at 1502.

According to his deposition on July 10, 2003, Mr. Jennings clearly stated that he reviewed an initial draft of the affidavit, made comments and adjustments on it, and returned it to counsel. (Jennings Dep. 7/10/03 at 4.) The Magistrate Judge, after conducting an in camera review of these draft affidavits, found that the drafts "contain communications between Jennings and counsel with respect to how the facts should be presented, including changes to the drafts." (Order ¶ 1.) In accordance with the court in *Chen*, this Court deems such communication between Mr. Jennings and his counsel to constitute "legal advice." Through deposition testimony and briefs submitted to the court, LMC has shown that specific privileged communications between Mr. Jennings and counsel, such as written comments by both, were included in the drafts.

Flowserve argues that the draft affidavits served one purpose, that is, "to lead to the creation of a final document for filing with the Court." (Objection at 4.) Flowserve cites an unpublished opinion from the Southern District of New York, *Sharma v. Chemical Bank*, in which the court refused to protect an affidavit on the grounds of attorney-client privilege. (Objection at 4 (citing 1989 U.S. Dist. LEXIS 11643 (S.D.N.Y.1989)).) Setting aside the fact that this unpublished opinion from another district does not control this Court's analysis, the Court finds that Flowserve has misapplied *Sharma*. In *Sharma*, the court found the draft affidavit at issue was not protected, because the draft was attached to an unprivileged document and disclosed after the end of the litigation for which the affidavit had been prepared. 1989 U.S. Dist. LEXIS 11643, *5. The court explained: "[T]he draft was reissued on September 14 as part of [a] document that is subject to no privilege claim. Whether or not the draft affidavit was properly the subject of a work product privilege claim before September 14, it is not properly the subject of such a claim thereafter. Its prior status does not insulate it from discovery when it is used as something other than a document prepared in anticipation of litigation when that other use itself is non-privileged." *Id.* at *5–6. This holding has no relevance to the instant controversy.

Here, LMC has argued that the drafts contain confidential communications that dis-

cuss the theory of the case and represent counsel's thought process regarding which facts are or are not relevant, as well as counsel and client's decision-making process regarding how best to present those facts. (LMC's Reply in Supp. of its Obj. To Mag. Order 2/13/04 at 2.) The Magistrate Judge then reviewed the drafts in camera, and accordingly found that the drafts contain communications "with respect to *how* the facts should be presented." (Order ¶ 1 (emphasis added).) As a result, the court found that the drafts contained communications between Jennings and his counsel that were not intended to be submitted to the court.

■ As is well established by the common law, the purpose of the attorney-client privilege is to foster openness between attorney and client to enable the attorney to give the most well-informed legal advice to the client. Accepting Flowserve's argument would frustrate the purpose of the privilege, by stifling the attorney's ability to advise the client at the time when the attorney's advice is most useful—i.e., before the client takes an action that could ultimately lead to a costly dispute in the courts. Thus, this Court concludes that attorney-client privilege protects the draft affidavits of John Jennings.

The Ninth Circuit has found that *in camera* review is an acceptable means to determine whether disputed materials fit within attorney-client privilege. *See, e.g., In re Horn,* 976 F.2d 1314, 1318 (9th Cir.1992) ("The proper procedure for asserting the attorney-client privilege as to particular documents, or portions thereof, [is] for [the individual] to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege."). However, this Court finds that it need not conduct its own *in camera* review of the materials already reviewed *in camera* by the magistrate judge. It is undisputed that the materials in question are drafts of affidavits of an LMC employee that contain communications between counsel for LMC and that employee made for the purposes of determining how the facts in the affidavit should be presented. The Court need not know the exact content of the communications to hold as a matter of law that the magistrate judge did not commit clear error in applying the attorney-client privilege.

## B. *The draft affidavits are protected by the work product doctrine.*

■ The Federal Rules of Civil Procedure provide the following codification of the work-product privilege:

[A] party may obtain discovery of documents ... otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3); *see also Upjohn Co. v. United States,* 449 U.S. 383, 398, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("The 'strong public policy' underlying the work-product doctrine ... has been substantially incorporated in Federal Rule of Civil Procedure 26(b)(3)."). Here, the draft affidavits were prepared in anticipation of litigation by both Jennings and counsel, and thus properly constitute work product. Flowserve contends that the inherent purpose of an affidavit to provide evidence from a witness belies any contention that the work product doctrine protects draft affidavits. (Objection at 6.) This Court disagrees with Flowserve, and finds no legal support for this argument.

■ A draft affidavit may properly comprise work product. *See, e.g., A.F.L. Falck, S.p.A. v. E.A. Karay Co.,* 131 F.R.D. 46, 49 (S.D.N.Y.1990). In *A.F.L. Falck, S.p.A.,* the court held that the debated draft affidavit was discoverable despite its work product status, because the party seeking disclosure proved a substantial need for the materials. *Id.* Specifically, the court was persuaded by the fact that the affiant was a resident of a foreign nation and therefore unavailable, such that his attendance as a witness could not have been procured by process or other reasonable means. *Id.* In the instant case, Jennings is not, to the Court's knowledge, similarly unavailable. Moreover, Flowserve has not demonstrated why it cannot challenge the accuracy of Jennings' testimony by using his depositions to highlight absence of

independent memory of the changes made to the draft affidavits. *See Hudson v. General Dynamics Corp.*, 186 F.R.D. 271 (D.Conn. 1999) (finding that no substantial need was shown by the defendant when the defendant has not demonstrated why it could not challenge the veracity or accuracy of plaintiff's allegations at trial by using the plaintiff's depositions to highlight the absence of independent memory of the events or the close similarity of their pretrial statements). The Court is not convinced that Flowserve has demonstrated a substantial need for the draft affidavits.

■ Moreover, attorneys' mental processes and opinions require a far stronger showing of necessity and unavailability to compel disclosure. *Upjohn Co. v. U.S.*, 449 U.S. 383, 402, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992). The Ninth Circuit has concluded that opinion work product may be discovered and admitted when mental impressions are the pivotal issue in a case and the need for the material is compelling. *Holmgren*, 976 F.2d at 577. The Fourth Circuit has even gone so far as to deny all discovery of opinion work product, which includes attorney's mental impressions, conclusions, opinions or legal theories. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir.1974). The Court finds that Jennings' draft affidavits consist of such mental impressions and opinions, and therefore constitute work product.

Drafts often contain attorney's and client's mental impressions, strategies, and either solicit or provide legal advice. *Id.; see Long v. Anderson Univ.*, 204 F.R.D. 129, 135 (S.D.Ind.2001) (concluding that client's draft responses to plaintiff's complaint protected from discovery by both attorney-client privilege as well as work product). Moreover, it has been held that draft responses to interrogatories are classic examples of opinion work product because they contain the attorney's mental impressions and legal strategies. *Bartlett v. State Farm Mut. Auto. Ins. Co.*, 206 F.R.D. 623, 630 (S.D.Ind.2002); *see Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, (N.D.N.Y.1989) (draft answers to interrogatories were protected by work product privi-

lege since they were written by plaintiff's attorneys for submission in adversarial proceeding). The Court finds that the draft responses to interrogatories at issue in the aforementioned cases are analogous to the draft affidavit at the center of the instant controversy.

Here, the Magistrate Judge found that the comments in the drafts provided the basis upon which counsel developed and completed the final affidavit. Drafts often go through multiple editing processes and thus, as in this case, will differ from the final product. In accordance with *Bartlett* and *Niagara Mohawk Power Co.*, this Court finds that the drafts, which contained additional handwritten comments, differ from the final affidavit and contain opinions and legal advice. The draft of an affidavit prepared by Jennings and his attorney contains materials that reflect the attorney's view of the case. Because Flowserve has not convinced this Court of a substantial necessity for disclosure, the drafts are thus protected by the work product doctrine.

### C. *LMC has not waived either privilege.*

■ Flowserve argues that the documents at issue are drafts of the affidavit, and thus filing the final version of the affidavit with the Court waives any claim of work product and attorney-client privilege. (Objection at 6.) The work product privilege may be waived through disclosure of the document, if the disclosure of work product "substantially increases the possibility that an opposing party could obtain the information." *See Grumman Aerospace Corp. v. Titanium Metals Corp.*, 91 F.R.D. 84, 89 (E.D.N.Y. 1981) (citing *GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 51–52 (S.D.N.Y.1979)). This Court does not find Flowserve's argument to be convincing. The Court finds that *InFoSystems, Inc. v. Ceridian Corp.*, to which Flowserve refers, is irrelevant to this case. In *InFoSystems*, the court determined that the defendant waived work product protection of a non-party witness affidavit by making evidentiary use of the affidavit. 197 F.R.D. 303, 307 (E.D.Mich.2000). Rather, the Court finds instructive the manner in which those courts that have applied the

work product privilege to draft interrogatory responses have addressed waiver of the privilege. In such circumstances, courts have not found disclosure of the response in its final form to waive the work product privilege that covers the drafts of the responses. *See, e.g., Niagara Mohawk Power Corp.*, 125 F.R.D. at 591 (holding that draft answers to interrogatories have retained their protected status and are not subject to discovery, even though the final draft is intended to be submitted).

■■■■■ Flowserve also contends that LMC waived its attorney-client privilege. The attorney-client privilege is not absolute, and it may be waived by placing privileged matters in controversy or by explicitly turning over privileged documents. *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir.2001). Generally, in order to waive the attorney-client privilege, the client must disclose the contents of a confidential communication. *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir.1997). Moreover, even when a party does not explicitly disclose the content of an attorney-client communication, he may waive the privilege implicitly by raising a claim which in fairness requires disclosure of the protected communication. *Id.* According to the Ninth Circuit, such "unfairness" occurs when the privilege would deny the opposing party access to information vital to its defense. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). Here, LMC has not explicitly disclosed the contents of the draft affidavits. Moreover, this Court does not believe that fairness requires the comments between Jennings and his counsel to be disclosed.

### D. Further in camera review of the contested documents is unnecessary.

■■■■ As has been previously stated in this district, *in camera* review is generally disfavored. *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 700 (D.Nev.1994). The United States Supreme Court has held that a district court may, in appropriate circumstances, conduct in camera review of documents. *United States v. Zolin*, 491 U.S. 554, 571–72, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (discussing crime-fraud exception to attorney-client privilege). However, a dis-

trict court should not conduct *in camera* review "solely because a party begs it to do so." *Diamond State Ins.*, 157 F.R.D. at 700 (citing *Zolin*, 491 U.S. at 571, 109 S.Ct. 2619).

■■■ In the instant case, the Magistrate Judge has already performed an *in camera* review. No party has objected to the magistrate judge's order in as much as it contains the factual finding that the documents at issue are drafts of an affidavit containing evidence of communications between counsel and the affiant, an employee of a party, that were made for purposes of deciding how facts should be presented in the affidavit. This Court has found that, based on this undisputed characterization of the communication, the Court may determine as a matter of law that the decision of the Magistrate Judge was not clearly erroneous. *See* Fed. R.Civ.P. 72(a) (stating that a magistrate judge's order may be set aside if clearly erroneous); *see Burdick*, 979 F.2d at 1370 (the district judge *must affirm* the magistrate judge's decision unless it is definite that a mistake has been committed). As such, this Court does not find it necessary to perform any additional *in camera* review of the materials. The Court finds that the communication at issue was unquestionably privileged and may not be disclosed.

### E. Flowserve's request to order production of redacted copies is denied.

Flowserve claims that, should the Court find the existence of privilege and conclude that no waiver of that privilege has occurred, the Court should order the redaction of any unwaived privilege information. The Court declines this request. The drafts are only useful to Flowserve to the extent they contain information that is additional or different to the final affidavit that Flowserve has already received. However, as this Court has explained above, to the extent that these drafts are different, these differences are protected by the attorney client privilege and the work product privilege. As such, there is no feasible way to redact the privileged portions.

*CONCLUSION*

For the reasons stated above, the Court DENIES Flowserve's Objection to the November 2, 2004 Magistrate Order.

IT IS SO ORDERED.